No. _____

In The

# Court of Criminal Appeals

RECEIVED
COURT OF CRIMINAL APPEALS
5/27/2015
ABEL ACOSTA, CLERK

Austin, Texas

*In re*
*David Carrillo*

Relator

*On Appeal from Cause No. 2015-820,815*
*In the 1st Precinct of the Justice of the Peace*
*Lubbock County, Texas*

## PETITION FOR WRIT OF MANDAMUS

Chuck Lanehart
State Bar No. 11891400
Chappel, Lanehart, & Stangl, P.C.
Attorneys at Law
1217 Avenue K
Lubbock, Texas 79401
(806) 765-7370
Fax (806) 765-8150
ChuckLanehart@LubbockCriminalDefense.com

Allison Clayton
State Bar No. 24059587
The Law Office of Allison Clayton
P.O. Box 64752
Lubbock, Texas 79464
(806) 773 – 6889
Fax (888) 688 – 4515
Allison@AllisonClaytonLaw.com

*Attorneys for Relator*

ORAL ARGUMENT REQUESTED

<u>**IDENTITY OF PARTIES AND COUNSEL**</u>

Pursuant to TEX. R. APP. P. 52.3(a), the following is a complete list of the

names of the parties and their counsel.

| PARTIES | COUNSEL |
|---|---|
| **David Carrillo**<br>Defendant / Relator | ***Trial Counsel***<br>Chuck Lanehart<br>Chappel, Lanehart, & Stangl, P.C.<br>1217 Avenue K<br>Lubbock, Texas 79401<br><br>***Appellate Counsel***<br>Chuck Lanehart<br>Chappel, Lanehart, & Stangl, P.C.<br>1217 Avenue K<br>Lubbock, Texas 79401<br><br>Allison Clayton<br>The Law Office of B. Allison Clayton<br>P.O. Box 64752<br>Lubbock, Texas 79464-4752 |
| **Lubbock County**<br>**Criminal District Attorney's Office**<br>Respondent | ***Trial Counsel***<br>Sushine Stanek<br>Assistant District Attorneys<br>P.O. Box 10536<br>Lubbock, Texas 79408-3536<br><br>***Appellate Counsel***<br>Jeffrey S. Ford<br>Assistant District Attorney<br>P.O. Box 10536<br>Lubbock, Texas 79408-3536 |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................i

TABLE OF CONTENTS.................................................................................ii

INDEX OF AUTHORITIES..........................................................................iii

STATEMENT OF THE CASE..........................................................................v

STATEMENT OF JURISDICTION..................................................................vi

ISSUE PRESENTED.....................................................................................vii

STATEMENT OF FACTS ...............................................................................2

SUMMARY OF THE ARGUMENT ..................................................................3

ARGUMENT ..................................................................................................4

**MANDAMUS RELIEF IS NECESSARY TO PROTECT MR. CARRILLO'S RIGHTS AND TO COMPEL THE STATE TO COMPLY WITH ITS MINISTERIAL DUTIES**

    **A. The Writ of Mandamus**.................................................................4

    **B. Article 39.14(a) of the Texas Code of Criminal Procedure**....................6

    **C. Mandamus Compelling the State to Comply With the Mandatory Provisions of Article 39.14 is Necessary to Protect Mr. Carrillo's Right to Discovery**..........................................................10

PRAYER .......................................................................................................13

CERTIFICATES ...........................................................................................14

APPENDICES

# INDEX OF AUTHORITIES

## *Federal Cases*

*Marbury v. Madison*,
   5 U.S. 137, 2 L.Ed. 60 (1803) ...............................................................................4, 5

*United States v. Denson*,
   603 F.2d 1143, (5th Cir. 1979) .................................................................................6

## *State Cases*

*Anderson v. City of Seven Points*,
   806 S.W.2d 791 (Tex. 1991) .....................................................................................6

*In re State ex rel. Weeks*,
   391 S.W.3d 117 (Tex. Crim. App. 2013) ......................................................... 5, 6, 12

*Padilla v. McDaniel*,
   122 S.W.3d 805 (Tex. Crim. App. 2003) ...................................................................v

*Raesz v. Mitchell*,
   415 S.W.3d 352 (Tex. App.—Ft. Worth 2013, no pet.) .............................................6

*State ex rel. Rosenthal v. Poe*,
   98 S.W.3d 194 (Tex. Crim. App. 2003) .....................................................................5

## *State Statutes*

TEX. CONST. art. V ...........................................................................................................v

TEX. CODE CRIM. PROC. ANN. art 4.04.............................................................................v

TEX. CODE CRIM. PROC. ANN. art. 15.17 (Vernon 2015)..................................................8

TEX. CODE CRIM. PROC. ANN. art. 39.14(a) .............................................................. passim

TEX. GOV'T CODE ANN. § 22.21(a) ..................................................................................v

# INDEX OF AUTHORITIES (CONT'D)

## *State Rules*

TEX. R. APP. P. 52 ....................................................................................................v

TEX. R. APP. P. 52.3(a) ............................................................................................ i


## *Secondary Sources*

BLACK'S LAW DICTIONARY (2d pocket ed. 2001)........................................................ 10

*King v. Barker*, 3 Burrow 1265 (1762) ................................................................... 4

S.B. 1611, INTRODUCED VERSION, March 8, 2013 ................................................... 8

SENATE COMMITTEE ON CRIMINAL JUSTICE,
BILL ANALYSIS, S.B. 1611, 83rd Leg., R.S. (2013)................................................ 8

SEN. CRIM. JUSTICE COMM., SENATE SUBCOMMITTEE REPORT,
83rd Leg., R.S. (Mar. 28, 2013)............................................................................. 8

TEXAS APPLESEED & TEXAS DEFENDER SERVICE,
TOWARDS MORE TRANSPARENT JUSTICE:
THE MICHAEL MORTON ACT'S FIRST YEAR 27 (2015) ............................................. 9

Tex. Comm. on Prof'l Ethics, Op. 646 (2014) ........................................................ 11

*The Michael Morton Act*, 83rd Leg., R.S.,
HEARINGS BEFORE THE CRIM. JUSTICE COMM. (Mar. 26, 2013) &
THE JUDICIARY AND CIV. JURISP. COMM. (Apr. 29, 2013)....................................... 8

WILLIAM BLACKSTONE,
3 COMMENTARIES ON THE LAWS OF ENGLAND (3d ed. 1862) .................................. 4

# STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case* | This is a petition for a writ of mandamus. Relator has been arraigned for murder. He seeks discovery pursuant to Article 39.14 of the Texas Code of Criminal Procedure. |
| *Respondent* | The Lubbock County Criminal District Attorney's Office (DA) along with any person or entity under contract with the DA. |
| *Trial Court* | Justice of the Peace, Precinct #1, of Lubbock County, Texas |
| *Course of the Proceedings* | On April 18, 2015, Mr. Carrillo was charged by complaint with two counts of murder. On April 22, 2105, Mr. Carrillo's attorney requested the DA turn over its discoverable evidence pursuant to Article 39.14(a) of the Texas Code of Criminal Procedure. Defense counsel asked the DA to comply with the request within fourteen days. The DA failed to turn over any evidence. On May 17, 2015, the assistant district attorney assigned to the case told Mr. Carrillo's attorney the DA would not turn over discoverable evidence until after grand jury proceedings. The instant petition for writ of mandamus follows. |

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to Article V, § 5(c) of the Texas Constitution, Article 4.04 of the Texas Code of Criminal Procedure, and Rules 52 and 72.1 of the Texas Rules of Appellate Procedure.

The Court of Criminal Appeals traditionally has concurrent, original jurisdiction with the courts of appeals over mandamus proceedings. TEX. CONST. art. V, §§ 5, 6; *Padilla v. McDaniel*, 122 S.W.3d 805, 806 (Tex. Crim. App. 2003). Despite this concurrent jurisdiction, traditional practice instructs the relator should first present a petition for a writ of mandamus to the appropriate court of appeals unless there is a compelling reason to not do so. *Padilla*, 122 S.W.3d at 803.

Relator in the instant case has not presented this petition for a writ of mandamus to the court of appeals because that court lacks jurisdiction to grant him relief. Relator requests the Court issue a mandamus against a county entity. The court of appeals only has jurisdiction to issue writs of mandamus against a "judge or a district or county court" or to otherwise enforce its jurisdiction. TEX. GOV'T CODE ANN. § 22.21(a), (b). The lack of jurisdiction by the court of appeals constitutes a compelling reason for bypassing the court of appeals. Consequently, this Court has, and should exercise, its jurisdiction over the case. *See* TEX. CONST. art. V, § 5(c); TEX. CODE CRIM. PROC. ANN. art 4.04; TEX. R. APP. P. 52.

# ISSUE PRESENTED

Do the discovery requirements of Article 39.14(a) of the Texas Code of Criminal Procedure begin only after the grand jury has indicted the accused, and is mandamus relief appropriate to compel a district attorney to comply with Article 39.14 before it has presented its case to the grand jury.

No. _____

In The

# Court of Criminal Appeals

Austin, Texas

*In re*
*David Carrillo*

Relator

*On Appeal from Cause No. 2015-820,815*
*In the 1st Precinct of the Justice of the Peace*

## PETITION FOR WRIT OF MANDAMUS

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

DAVID CARRILLO, Appellant in docket number _____, submits this Petition for Writ of Mandamus in support of his request for the Court to enter an order directing the Lubbock County Criminal District Attorney's Office (DA) along with any person or entity under contract with the DA to turn over discoverable evidence prior to initiation of grand jury proceedings.

## STATEMENT OF FACTS

On April 18, 2015, the relator, Mr. Carrillo, was arrested on charges of murder. That same day, he was charged by compliant with two counts of murder in cause number 820,815, in the Justice Court, Precinct Number 1, of Lubbock County, Texas, and advised of the charges against him and of his rights. *See* TEX. CODE CRIM. PROC. ANN. art. 15.17 (Vernon 2015); *State v. Carrillo*, No. 2015-820,815, Criminal Complaint (Apr. 18, 2015) (attached in Appendix A). Mr. Carrillo has remained incarcerated since the date of his arrest.

On April 22, 2015, Mr. Carrillo's attorney filed a Notice of Appearance of Counsel and Formal Request for Compliance with Article 39.14 of the Texas Code of Criminal Procedure. (Appendix B). In it, Mr. Carrillo's attorney requested the DA produce discoverable evidence within fourteen days. The DA failed to comply with the request. On May 17, 2015, the assistant district attorney appointed to the case emailed Mr. Carrillo's attorney indicating the DA's office would not produce any discoverable evidence until after the grand jury proceedings. ("Affidavit of Chuck Lanehart," Appendix C). The instant petition for writ of mandamus follows.

## SUMMARY OF THE ARGUMENT

The provision at issue, Article 39.14(a) of the Texas Code of Criminal Procedure, mandates "as soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of [detailed items of evidence]." The only temporal limitation imposed by this statute is "as soon as practicable" after defendant's request. This trigger was the result of intentional design by the Texas Legislature to ensure discovery in criminal cases was complete and prompt, thereby promoting a more transparent, fair, and efficient criminal justice system.

Despite this plain facial reading of the statute and the undeniable intent of the Legislature, the DA in Mr. Carrillo's case has unilaterally interposed its own temporal limitations into the statute by taking the position its discovery obligation is triggered by indictment. Under this interpretation, no longer does the statute say the duty to disclose begins "as soon as practicable after receiving a timely request;" it now reads "as soon as practicable after receiving a timely request and after return of indictment by the grand jury." This reading disregards the ministerial duties imposed by Article 39.14. Because there is no adequate remedy for Mr. Carrillo to redress the harm done to him by the State's refusal to comply with statutory requirements, a writ of mandamus is necessary to protect his rights to discovery.

**MANDAMUS RELIEF IS NECESSARY TO PROTECT MR. CARRILLO'S RIGHTS AND TO COMPEL THE STATE TO COMPLY WITH ITS MINISTERIAL DUTIES**

## A. The Writ of Mandamus

The writ of mandamus is, and has always been, a stopgap. Lord Mansfield offered this history of the writ: "It was introduced, to prevent disorder from a failure of justice, and defect of police. Therefore it ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one." *King v. Barker*, 3 Burrow 1265, 1267 (1762) (Appendix D). Blackstone later explained the writ as a command from the court "directed to any person, corporation, or inferior court of judicature within the queen's dominions, requiring them to do some particular thing therein specified, which appertains to their office and duty . . ." WILLIAM BLACKSTONE, 3 COMMENTARIES ON THE LAWS OF ENGLAND 24-25 (3d ed. 1862) (Appendix E).

The writ of mandamus device was formally adopted into American law in *Marbury v. Madison*, 5 U.S. 137, 2 L.Ed. 60 (1803), which came to the Court as a petition for a writ of mandamus against then Secretary of State James Madison. The Court explained Madison, in his role as Secretary of State, had certain duties as "a public ministerial officer of the United States . . . and if he neglects or refuses to perform them, he may be compelled by mandamus, in the same manner as other persons holding offices . . ." *Id.* at 141.

The Court in *Marbury* spoke of the important role of the writ of mandamus: "The government of the United States has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right." *Id.* at 163. The Court continued, "where a specific duty is assigned by law, and individual rights depend upon the performance of that duty . . . the individual who considers himself injured has a right to resort to the laws of his country for a remedy." *Id.* at 166. The writ of mandamus is the device designed to protect the individual in these circumstances. *See id.* The Court then mandated, "to render the mandamus a proper remedy, the officer to whom it is to be directed, must be one to whom, on legal principles, such writ may be directed; and the person applying for it must be without any other specific and legal remedy." *Id.* at 169.

The writ of mandamus has passed through history relatively unscathed. In modern times it remains virtually the same as it was over 250 years ago—a stopgap to protect individuals' rights when they otherwise have no protection. And, as in *Marbury*, a party seeking a writ of mandamus must show that (i) he has no other adequate remedy at law and (ii) the act sought to be compelled is purely ministerial. *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013); *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 215 (Tex. Crim. App. 2003).

"No adequate remedy at law" means either the relator truly has no other recourse to seek vindication of his rights or, even if he technically does have a possible remedy it is "so uncertain, tedious, burdensome, slow, inconvenient, inappropriate, or ineffective as to be deemed inadequate." *Weeks*, 391 S.W.3d at 122. "The ministerial-act requirement is satisfied if the relator can show a clear right to the relief sought." *Id.* It is available against any court or public official compelled by law to take certain actions. *Raesz v. Mitchell*, 415 S.W.3d 352, 353 (Tex. App.—Fort Worth 2013, no pet.) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991) ("A writ of mandamus will issue to compel a public official to perform a ministerial act"); *United States v. Denson*, 603 F.2d 1143, 1153 (5th Cir. 1979) ("The writ of mandamus is an order directing a public official or public body to perform a duty exacted by law. It may be issued to compel compliance with a variety of legal duties by a host of officials and bodies.").

## B. Article 39.14(a) of the Texas Code of Criminal Procedure

Article 39.14 issues a clear directive to the State:

> Subject to the restrictions provided by Section 264.408, Family Code, and Article 39.15 of this code, *as soon as practicable after receiving a timely request from the defendant* the state *shall* produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any [of the enumerated items of evidence].

TEX. CODE CRIM. PROC. ANN. art. 39.14(a) (emphasis added).

- 6 -

There is no dispute this statute requires the DA to disclose its evidence to the defendant. The question presented in the instant case is when the DA's duty to disclose begins. The answer is found on the face of the statute. The DA's duty to disclose begins "as soon as practicable after receiving a timely request from the defendant." *Id.* There is no reference to the procedural posture of the case. *See id.* There is no requirement the case be at a certain stage of development. *See id.* The statute does not give the DA any ability to deny the request; its commands are undeniably clear.

Pushback by district attorneys from these broad requirements is not surprising. The "as soon as practicable" requirement is a dramatic change from the previous law, which itself had been in effect since 1965. Under the old law, Article 39.14 merely required the court to order the State to disclose its evidence "before or during trial of a criminal action." *Id.*, amended by Act of May 16, 2013, 83rd Leg., R.S., ch. 49, § 2. Under this system, DA's shared their files only if they decided, as a matter of their own, self-regulated internal policies, to do so. Even then, disclosure would oftentimes not occur until the case was far advanced in the criminal justice process. Unfortunately, this policy also resulted in instances where defendants did not ever receive full discovery in their cases, and innocent men and women were convicted despite exculpatory evidence held by the State.

In reaction to these miscarriages of justice, in 2013 the Texas Legislature introduced Senate Bill 1611, known as the Michael Morton Act. Its author outlined the objectives of the Bill: (i) promoting efficiency of the criminal justice system; (ii) ensuring all defendants their "constitutional right to a defense"; and (iii) preventing wrongful convictions. SENATE COMMITTEE ON CRIMINAL JUSTICE, BILL ANALYSIS, S.B. 1611, 83rd Leg., R.S. (2013) (Appendix F). Testimony given at both the Senate and House hearings likewise reiterated many times over the objective of ensuring an open, transparent, efficient, and accurate criminal justice system. *The Michael Morton Act*, 83rd Leg., R.S., HEARINGS BEFORE THE CRIM. JUSTICE COMM. (Mar. 26, 2013) & THE JUDICIARY AND CIV. JURISP. COMM. (Apr. 29, 2013).

The "as soon as practicable" language of Article 39.14(a) was actually not in the original bill. When the bill was originally introduced, it read "beginning no later than 30 days after the initial appearance of the defendant the attorney representing the state shall disclose . . ." S.B. 1611, INTRODUCED VERSION, March 8, 2013 (Appendix G). During Senate negotiations, however, the language was intentionally broadened from "30 days after initial appearance" to "as soon as practicable" after defendant's request. *See* SEN. CRIM. JUSTICE COMM., SENATE SUBCOMMITTEE REPORT, 83rd Leg., R.S. (Mar. 28, 2013) (Appendix H).

This change was made because those involved in amending the bill recognized "[c]ompetent representation requires analysis of the charges against the accused, as well as an independent investigation and evaluation of the evidence *likely to be provided to the grand jury* and/or admitted at trial." TEXAS APPLESEED & TEXAS DEFENDER SERVICE, TOWARDS MORE TRANSPARENT JUSTICE: THE MICHAEL MORTON ACT'S FIRST YEAR 27 (2015) (Exhibit H) (emphasis added). In reviewing the State's evidence, "defense counsel can . . . conserve precious criminal justice resources by seeking reduced charges or a no-bill *at the grand jury stage of the case*." *Id*. (emphasis added).

> Contrary to the office policies of many elected district and county attorneys, the Act contains only one condition for triggering the right to this production: the receipt of a "timely request from the defendant." There is no reference to a case's procedural posture or reservation of the State's right to deny access to specified materials under certain circumstances. A request for discovery may be submitted at any point in the proceedings against the accused, and once it is received, the prosecution must respond "as soon as practicable." The plain reading also is reflected in the Act's legislative history. The original bill required discoverable information to be disclosed "no later than 30 days after the defendant's initial appearance." However, the clause was struck from the Senate Committee Report and replaced by the current statutory language, signifying that the Legislature considered and rejected the proposal to require discovery at a specific point in the case's life cycle.

*Id.* This legislative history explains the clear mandates of the statute. The Legislature intentionally omitted trigger events for the statute apart from the defendant's request.

## C. Mandamus Compelling the State to Comply With the Mandatory Provisions of Article 39.14 is Necessary to Protect Mr. Carrillo's Right to Discovery

In the case at bar, on April 22, 2015, Mr. Carrillo requested the State share its discoverable evidence under 39.14 requirements. (Appendix B). Mr. Carrillo allowed the State fourteen days to comply with his request. (*See id.*). Fourteen days have come and gone, and the State has failed to provide any discovery. It has indicated it will not comply with the statute until after indictment. (Appendix C).

The State's refusal to comply with Article 39.14 is (i) an arbitrary (ii) disregard of clear statutory mandate done (iii) in defiance of Legislative intent. The State's policy is arbitrary because neither the words "indictment" nor "grand jury" appear anywhere in the text of Article 39.14. There is absolutely no language in the statute indicating the case must be past the grand jury, or any other specified stage, of the criminal proceedings. There is thus no basis for the State's conclusion that it does not have to recognize a defendant's rights to discovery until after it has made its case to the grand jury.

The State's reasoning disregards clear statutory mandate because the statute offers no room for maneuvering around its requirements: "as soon as practicable" does not mean "after the grand jury indictment." To the contrary, Black's Law Dictionary defines "practicable" as "reasonably capable of being accomplished; feasible." BLACK'S LAW DICTIONARY 543 (2d pocket ed. 2001).

Simply put, the statute plainly mandates after a defendant has made his 39.14 request the DA must comply with the request as soon as it can. The DA in Mr. Carrillo's case interprets Article 39.14 to allow it to wait until after the grand jury has indicted Mr. Carrillo before it chooses to come into compliance with Article 39.14. This interpretation is wholly unfounded. Neither practicing attorneys nor the courts entrusted with enforcement of the Legislature's wishes can tolerate such a reading of the law. *See* Tex. Comm. on Prof'l Ethics, Op. 646 (2014) (Appendix I) ("Under Rule 8.04(a)(12) [of the Texas Disciplinary Rules of Professional Conduct] prosecutors are required to produce and permit the inspection of their files, subject only to the limitations set forth in article 39.14. Thus, prosecutors would violate Rule 8.04(a)(12) if they attempted to impose conditions not found in article 39.14 before making the required disclosures").

Finally, the State's position defies legislative intent. As discussed earlier, the Legislature originally did draft Article 39.14 so it would not be triggered until a certain point in the proceedings, i.e. thirty days after the initial appearance. The drafters intentionally removed that language, however, so defense attorneys could have the ability to evaluate the evidence against their clients before the grand jury proceedings, just in case such evidence could result in a no bill. The State's current stance advances a policy specifically considered and rejected by the Legislature.

Mr. Carrillo has a right to discovery. His right to discovery began after he requested discoverable evidence from the State. The State is denying him his right based on a position that contradicts the actual language and the statutory intent of Article 39.14. Mr. Carrillo has no means of enforcing his discovery rights—there is no procedure that will give him the immediate relief he is due other than a writ of mandamus. *See Weeks*, 391 S.W.3d at 122.

Moreover, Article 39.14 commands "the state *shall*" produce discoverable evidence as soon as practicable following the accused's request. TEX. CODE CRIM. PROC. ANN. art. 39.14(a) (emphasis added). Because the DA has no option to ignore the statute's requirements, Mr. Carrillo has a right to the relief he now seeks. *See id.*; *Weeks*, 391 S.W.3d at 122. Accordingly, a writ of mandamus directing the State to comply with the requirements of Article 39.14 is necessary to the rights given to Mr. Carrillo by the Texas Legislature.

Mr. Carrillo has a pre-indictment right to discovery. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(a). The DA has a specific duty assigned by law to turn over its discovery as soon as practicable after the defendant requests it. Mr. Carrillo has requested discoverable evidence, yet the DA has refused to honor that request. The Court ought to issue a writ of mandamus compelling the DA to comply with Article 39.14(a) of the Code of Criminal Procedure.

## PRAYER

Relator David Carrillo prays this Court would find that the Lubbock County Criminal District Attorney has failed to perform a ministerial duty under the Texas Code of Criminal Procedure and that Mr. Carrillo has no other adequate remedy at law to cure the violation that has occurred due to the District Attorney's failure. Accordingly, Mr. Chisum asks the Court to issue a writ of mandamus directing Respondent to immediately comply with Article 39.14(a) of the Texas Code of Criminal Procedure.

Respectfully submitted,

Law Office of Allison Clayton
P.O. Box 64752
Lubbock, Texas 79464-4752
Phone No.: (806) 773-6889
Fax No.: (888) 688-4515

By: _____
Allison Clayton
State Bar No. 24059587
Allison@AllisonClaytonLaw.com


CHAPPELL, LANEHART & STANGL, P.C.
1217 Avenue K
Lubbock, Texas 79401-4025
Phone No.: (806) 765-7370
Fax. No.: (806) 765-8150

By: _____
Chuck Lanehart
State Bar Number 11891400

## CERTIFICATION

I certify that I have reviewed this petition and conclude that every factual statement in the petition is supported by competent evidence included in the appendix. *See* Tex. R. App. P. 52.3(j)

_____
Allison Clayton

## CERTIFICATE OF SERVICE

I certify that on May 19, 2015, a copy of this brief was served on opposing counsel, Jeffrey S. Ford of the Lubbock County Criminal District Attorney's Office via electronic mail.

_____
Allison Clayton

## CERTIFICATE OF COMPLIANCE

I certify the foregoing Brief on the Merits complies with Rule 9.4(i)(2)(B) of the Texas Rules of Appellate Procedure. The brief, excluding those portions detailed in Rule 9.4(i) of the Texas Rules of Appellate Procedure, is 2,846 words long. I have relied upon the word count function of Microsoft Word, which is the computer program used to prepare this document, in making this representation.

_____
Allison Clayton

# APPENDIX A

*State v. Carrillo*
No. 2015-820,815
Criminal Complaint dated April 18, 2015

 NO. 2015-820815

THE STATE OF TEXAS
       VS.
**DAVID CARRILLO**

| | | | | |
|---|---|---|---|---|
| | | | Bond: | **$1,000,000** |
| | | | Date Prepared: | April 18, 2015 |
| | | | Ref#: | 900240050 |
| PID: 235212 | DOB: 02/06/1986 | | Agency/Rpt#: | LPD / 15-14160 |
| Felony Charge: **MURDER** | | | Arrest Date: | / / |
| District Court No: | | | Prior Cause No: | |

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

Before me the undersigned Assistant Criminal District Attorney of Lubbock County, Tx, this day appeared the undersigned affiant, who under oath says that he has good reason to believe and does believe that in Lubbock County, Texas, **DAVID CARRILLO** hereafter styled the Defendant, heretofore on or about the 18th day of April, A.D. 2015, did then and there intentionally or knowingly cause the death of an individual, namely, JENNIFER CRUZ, by shooting her with a firearm;

Count 2

And further, in Lubbock County, Texas, DAVID CARRILLO, hereafter styled the Defendant, heretofore on or about the 18th day of April, A.D. 2015 did then and there intentionally or knowingly cause the death of an individual, namely, ALBERT MARTINEZ, by shooting him with a firearm;

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Sworn to and subscribed before me on April 18, 2015

_____
AFFIANT

_____
ASSISTANT CRIMINAL DISTRICT ATTORNEY OF LUBBOCK COUNTY, TEXAS

COMPLAINT

# APPENDIX B

*State v. Carrillo*
No. 2015-820,815

Notice of Appearance of Counsel and Formal
Request for Compliance with Article 39.14 of the
Texas Code of Criminal Procedure

Filed April 22, 2015

CAUSE NO. 2015-820,815

| THE STATE OF TEXAS | § | IN THE JUSTICE OF THE PEACE #1 |
| | § | |
| V. | § | OF |
| | § | |
| DAVID CARRILLO | § | LUBBOCK COUNTY, TEXAS |

**NOTICE OF APPEARANCE OF COUNSEL
AND FORMAL REQUEST FOR COMPLIANCE WITH ARTICLE 39.14
OF THE TEXAS CODE OF CRIMINAL PROCEDURE**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Chuck Lanehart, Attorney at Law, and enters this his appearance as the attorney of record for DAVID CARRILLO, Defendant, herein, representing him in the above entitled case, and requesting that he be notified of any and all settings and/or notifications in the above entitled and numbered case.

In addition to this attorney's appearance, this document shall also serve as a formal request upon the prosecuting attorney to comply with 39.14 of the Texas Code of Criminal Procedure to produce and permit the inspection and/or the electronic duplication, copying and photographing by and on the behalf of the Defendant the following, in unredacted form:

a. Any offense reports of any law enforcement officer or officers, investigators or persons involved in the investigation, arrest and/or detainment of the Defendant herein;

b. Any documents or papers of any witness that constitute or contain evidence to any matter involved in this proceeding;

c. Any documents or papers of the Defendant that constitute or contain evidence to any matter involved in this proceeding;

FILED 2015 APR 22 AM 11: 07 JUSTICE OF PEACE 1 LUBBOCK COUNTY

d. Any written or recorded statements of any witness;

e. Any written or recorded statements of the Defendant;

f. Any photographs, audio or video recordings of the Defendant, witnesses, victims, or alleged crime scenes that constitute or contain evidence to any matter involved in this proceeding;

g. Any books, accounts, ledgers, letters, photographs, or other tangible objects involved in the investigation and/or prosecution of this offense;

h. Any tangible property of any type seized during any arrest, search, detainment of the Defendant herein;

g. Any evidence which is exculpatory, impeachment or mitigating document, item or information in the possession, custody or control of the State, and law enforcement agency, or any State agency that tends to negate the guilt of the Defendant or would tend to reduce the punishment for the offense charged;

h. The names, current addresses, current telephone numbers, of any witness which may be called by the prosecution in this cause pursuant to Rules 702, 703, and 705 of the Texas Rules of Evidence;

i. The criminal history of each and every witness the prosecution may call as a witness in this cause; but not including the work product of counsel for the State in the case and their investigators employed by the prosecuting attorney for the State, nor their notes, nor written communications between the State and an agent, representative, or employee of the State that constitute or contain evidence material to any matter involved in this cause. However, this request does extend to all items which are in the possession, custody, or control of the State or any person under contract with the

State. The State may provide electronic duplicates of any document or other information.

This request extends to any time before, during or after trial that the State, its agents, servants and/or employees discover any additional document, item or information required to be disclosed pursuant to Article 39.14 of the Texas Code of Criminal Procedure under Subsection (h) requiring the prosecuting attorney for the State to promptly disclose the existence of the document, item or information to the Defendant, his attorney of record and the Court.

Additionally, the Defendant, by and through his attorney of record, hereby requests that the State electronically record or otherwise document any document, item, or other information provided pursuant to hereto, setting forth each document, item, or other information and the date and time same was provided to Defendant's attorney of record.

This request is made pursuant to the requirements of Article 39.14 of the Texas Rules of Criminal Procedure. The Attorney for Defendant requests that the prosecuting attorney for the State comply with these requests as soon as practicable, but no later than fourteen (14) days of this request, or that the prosecuting attorney for the State file a formal motion to extend the time from the aforementioned fourteen (14) days, for the furnishing of same and request a formal hearing for the reasons for noncompliance and/or extending the time for compliance.

Respectfully submitted,

**CHAPPELL, LANEHART & STANGL, P.C.**
**ATTORNEYS AT LAW**
1217 Avenue K
Lubbock, Texas 79401
Ph. No. (806) 765-7370
Fax No. (806) 765-8150

By:_____
Chuck Lanehart
State Bar No.: 11891400

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing *Notice of Appearance of Counsel and Formal Request for Compliance with Article 39.14 of the Texas Code of Criminal Procedure* has been hand-delivered or mailed, postage prepaid, to the Criminal District Attorney of Lubbock County, Texas, on the 2\_\_\_ day of April, 2015.

_____
Chuck Lanehart

# APPENDIX C

Affidavit of Chuck Lanehart
with "Exhibit 'A'" attached

Dated May 19, 2015

**STATE OF TEXAS** §

§

**COUNTY OF LUBBOCK** §

## AFFIDAVIT OF CHUCK LANEHART IN SUPPORT OF
## PETITION FOR WRIT OF MANDAMUS

BEFORE ME, the undersigned authority, on this day personally appeared Chuck Lanehart, who, after having been duly sworn:

"My name is Chuck Lanehart, a lawyer with offices in Lubbock County, Texas. On April 21, 2015, I was assigned as counsel for David Carrillo by the Lubbock County Public Defender Office. On April 22, 2015, I notified the Lubbock County Criminal District Attorney of my status as Mr. Carrillo's lawyer, and I simultaneously filed a written request that the State provide discovery pursuant to Article 39.14 of the Texas Code of Criminal Procedure in Cause No. 820,815, in the Justice Court, Precinct No. 1, of Lubbock County, Texas. A copy of the request was provided the Criminal District Attorney.

"On May 17, 2015, I emailed Asst. Criminal District Attorney Sunshine Stanek, asking when I might expect to be provided discovery. On the same day, Ms. Stanek replied with the following message:

> I am handling this case. We have not received everything from LPD yet but as soon as we do I will send it to grand jury and you can have discovery. I will check with them in the morning.

"Attached as 'Exhibit A' is a copy of the email chain referenced above. I have not received any discovery from the Criminal District Attorney."

SIGNED on this the ____19th____ day of May, 2015.

_____
Chuck Lanehart

SWORN TO AND SUBSCRIBED BEFORE ME by the said Chuck Lanehart on this the ____19th____ day of May, 2015, to certify which witness my hand and seal of office.



_____
Notary Public, State of Texas

BERNADETTE VAUGHN PAGE
MY COMMISSION EXPIRES
June 26, 2016

# EXHIBIT "A"

Print                                                                                                        Close

---

# Re: David Carrillo - Murder #820,815/JP 1

---

From: **Stanek** (sstanek@lubbockcda.com)
Sent: Sun 5/17/15 6:36 PM
To:    <chucklanehart@lubbockcriminaldefense.com>
       (chucklanehart@lubbockcriminaldefense.com)
Cc:    Matt Powell (mpowell@lubbockcda.com); trey hill (thill@co.lubbock.tx.us)

I am handling this case. We have not received everything from LPD yet but as soon as we do I will send to grand jury and you can have discovery. I will check with them in the morning.
S

Sent from my iPhone

On May 17, 2015, at 6:02 PM, Chuck Lanehart <chucklanehart@hotmail.com> wrote:


Matt, Sunshine and Trey:

I didn't know to whom I should direct this email, so I just sent it to all of you. Sorry for the shotgun approach.

My client, David Carrillo, was charged by complaint with two counts of murder on April 18. On April 22, I filed my notice of appearance as counsel and a notice for discovery pursuant to Article 39.14, CCP.

When might I expect to receive discovery in this matter?

Thanks,

Chuck Lanehart
Board Certified, Criminal Law, Texas Board of Legal Specialization
Chappell, Lanehart & Stangl, P.C.
Attorneys at Law
1217 Avenue K
Lubbock, TX 79401
Ph:   806-765-7370
Cell: 806-535-2689
Fax: 806-765-8150
chucklanehart@lubbockcriminaldefense.com
http://lubbockcriminaldefense.com/

**NOTICE**

**The information contained in this communication is protected by the attorney/client and/or**

work/product privileges. It, along with any attachments hereto, is also covered by the Electronic Communications Privacy Act, 18 U.S.C Sections 2510-2512. It is intended only for the personal and confidential use of the recipients named in the communication, and the privileges are not waived by virtue of this having been sent by electronic mail. If the person actually receiving this communication or any other reader of the communication is not the named recipient, any use, dissemination, distribution or copying of the communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (please call collect) and delete the original from your system.
Thank You.

# APPENDIX D

*King v. Barker,*
3 Burrow 1265, 1267 (1762).

FUND.
Order

# REPORTS

## OF

## CASES

### ARGUED AND ADJUDGED

Ft. Brit.

## In the Court of King's Bench,

DURING THE TIME OF

### Lord MANSFIELD's presiding in that Court,

FROM

MICHAELMAS TERM 30 GEO. II. 1756, to
EASTER TERM 12 GEO. III. 1772.

IN FIVE VOLUMES.

---

By Sir JAMES BURROW, Knt.
Late MASTER of the CROWN OFFICE, and one of the BENCHERS
of the Honourable Society of the INNER TEMPLE.

---

The THIRD EDITION, Corrected;
With the ADDITION of MARGINAL NOTES, and REFERENCES
to the other Reports of the same Cases.

---

VOL. III.

From MICHAELMAS TERM 2 GEO. III. 1761, to TRINITY TERM
6 GEO. III. 1766, inclusive.

---

LONDON:

PRINTED BY A. STRAHAN AND W. WOODFALL,
LAW-PRINTERS TO THE KING'S MOST EXCELLENT MAJESTY;
FOR E. AND R. BROOKE IN BELL-YARD, NEAR TEMPLE-BAR.
MDCCXC.

# Hilary Term,

## 2 Geo. 3. B. R. 1762.

### Rex *versus* Barker et al'.

(1 Black Rep.
300. 352. S. C.)

Saturday, 23 Jan.
1762.

Mandamus to
truftees of a
meeting-houfe,
to admit a dif-
fenting teacher,
granted.

ON *Wednefday* 10th of *June* 1761, Mr. *Norton* moved for a MANDAMUS to be directed to the furviving truftees under a deed of releafe made by one *Charles Vinfen* to *John Enty*, a diffenting minifter at *Plymouth*, and other truftees, fettling a then new-built *meeting-houfe*, garden, &*c.* upon the faid truftees, in truft (amongft other things) " To fuffer the *meeting-houfe* to be for the public worfhip of " God by fuch congregation of proteftant diffenters com" monly called *prefbyterians*, as fhould fit under and attend the " miniftry of the faid Mr. *John Enty* or fuch other prefby" terian minifter or minifters as fhould in his and their room " fucceffively, in all times then coming, be, *by the members* " *in fellowfhip* of the faid or fuch like congregation or con" gregations, regularly and fairly *chofen and appointed* to be " the minifter, preacher or paftor, to preach in the faid " meeting ;" requiring them to admit *Chriftopher Mends* to the *ufe of the* PULPIT thereof, as paftor, minifter, or preacher there ; he the faid *Chriftopher Mends* being *duly lected* thereto.

He produced an affidavit of the facts, and of Mr. *Mend's* election ; and of demand and refufal of the ufe of the meeting-houfe : and he cited the * cafe of *Rex* v. *Bloore*, *P.* and *Tr.* 1760, which was a *mandamus* to reftore *William Langly* to the office of curate of a chapel ; and the rule was made abfolute upon this principle, that where there is a *temporal right*, this " Court will affift by *mandamus*."

* Vide ante p.
1043 to 1046.

Lord MANSFIELD took this opportunity of declaring, That the Court had thought of that cafe of the curate of the chapel of *Calton*, fince the determination of it, as well as before : and they were thoroughly

4

roughly satisfied with the grounds and principles upon which *that mandamus* was granted.

Where there is a *right* to execute an office, perform a service, or exercise a franchise; (more especially if it be in a matter of public concern, or attended with profit;) and a person is kept out of possession, or dispossessed of such *right*, and has *no other* specific legal remedy; this court ought to assist by a *mandamus*; upon reasons of *justice*, as the writ expresses—*Nos A. B. debitam et festinam justitiam* " *in hac parte fieri volentes, ut est justum*;" and upon reasons of public *policy*, to preserve peace, order, and good government.

The interposing this writ where there is *no other specific* REMEDY, is greatly for the benefit of the subject and the advancement of justice. The speedy decision of the question, in that case which has been mentioned, by an immediate trial in a feigned issue, shews it.

This case is not indeed quite the same as that was : but still it is reasonable to grant a rule to shew cause.

On *Monday*, 23d *November* 1761, Mr. *Thurlow* and Mr. *Dunning* shewed cause against the *mandamus*.

They controverted, by affidavits, the election of *Mends* ; and endeavoured to support the election of Mr. *Hanmer*, whom the trustees had put into possession.

The majority of the congregation seemed to be on the side of *Mends* : the trustees espoused *Hanmer*, and meant to maintain him with a high hand.

There was no colour for the election of *Hanmer* : and that of *Mends* was liable to objections.

This contest had raised great animosity, spirit, and obstinacy ; especially in those who were for *Hanmer* : and as they thought their strength lay in throwing obstacles in the way, of *any* (more especially a *speedy*) redress, as *Hanmer* was upholden and maintained in possession by the trustees ; their counsel, with great earnestness and ability, argued against making the rule absolute for a *mandamus* ; and contended that it could not be " to *admit*," where another was in *possession*.

A *mandamus* " to *admit*" goes no further, (they said) than to give a LEGAL *possession* where otherwise the party would be
                                                                    without

1762.

Rex v.<br>Barker and<br>Another.

without remedy. And to prove the diftinction between a *mandamus* to *admit*, and a *mandamus* to *reftore* to a former poffeffion,—They cited the cafe of *Rex* v. *dean and chapter of Dublin*, 1 Sir *J. S. p.* 538. *per Pratt*. " A *mandamus* " to admit is only to give a *legal*, not an actual poffeffion : " though, in a *mandamus* to *reftore*, the court will go " further."

But here, another perfon (Mr. *Hanmer*) is *in poffeffion* : and Mr. *Mends* never has been fo. Here is *no* LEGAL right : and this court can *not take notice of* TRUSTS, fo as to give relief, upon an *equitable* title only. Nor is this gentleman the *ceftuy qui truft* ; at *moft*, his title is *only equitable*.

Lord MANSFIELD—A *mandamus* is a prerogative writ ; to the aid of which the fubject is intitled, upon a proper cafe previoufly fhewn, to the fatisfaction of the court. The original nature of the writ, and the end for which it was framed, direct upon what occafions it fhould be ufed. It was introduced, to prevent diforder from a failure of juftice, and defect of police. Therefore it ought to be ufed upon all occafions where the law has eftablifhed no fpecific remedy, and where in juftice and good government there ought to be one.

Within the laft century, it has been liberally interpofed for the benefit of the fubject and advancement of juftice.

The value of the matter, or the degree of its importance to the public police, is not fcrupuloufly weighed. If there be a *right*, and *no other* fpecific remedy, *this* fhould not be denied.

Writs of *mandamus* have been granted, to admit *lecturers*, *clerks*, *fextons*, and *fcavengers*, &c; to reftore an alderman to precedency, an attorney to practice in an inferiour court, &c.

*Since* the act of toleration, it ought to be extended to protect an endowed paftor of proteftant diffenters ; from analogy and the reafon of the thing.

The *right itfelf* being *recent*, there can be no *direct ancient* precedent : but every cafe of a lecturer, preacher, fchoolmafter, curate, chaplain is in point.

*The* DEED is the foundation or endowment of the paftorfhip. The form of the inftrument is neceffarily by way of truft : for the meeting-houfe, and the land upon which it

VOL. III.                    D                    ftands,

ftands, could not be limited to *Enty* and his fucceffors. Many lectureſhips and other offices are endowed by truſt-deeds. The *right* to the function is the *fubſtance*, and draws after it every thing elfe as appurtenant thereto. The power of the truſtees is merely in the nature of an authority to admit. The ufe of the meeting-houfe and pulpit, in this cafe, follows, by neceſſary confequence, the right to the function of miniſter, preacher, or paſtor; as much as the *infignia* do the office of a mayor; or the cuſtody of the books, that of a town-clerk.

Mr. Juſtice WILMOT—It has been granted in the cafe of fcavengers. It is a *prerogative writ*, and ſhall be granted to ampliate juſtice, and to preferve a right; where there is no fpecific legal remedy; where no aſſize will lie.

Mr. Juſtice FOSTER—Here is a *legal right*. Their miniſters are tolerated and *allowed*: their right is *eſtabliſhed* therefore as a *legal* right, and as much as any other legal right.

N. B. This Mr.
Hanmer was in
poffeffion, and
claimed to be
duly elected to
the fame miniſtry
or paſtorſhip.

THE COURT propofed an *iſſue* to try " Whether Mr. " *Hanmer* was or was not *duly elected*"; as the cheapeſt and beſt way to put it in.

It was then adjourned to the firſt day of this prefent *Hilary* term, in order that the parties might give an anſwer, " Whether they would agree to *this iſſue*;" or " Whether " they would agree to proceed to a *new election*:" and the parties themfelves to be confulted, and make their election.

But afterwards, (on Tuefday 24th *November* 1761,) Lord MANSFIELD propofed and made an alteration in the rule to be drawn up in this cafe: which alteration he judged to be neceſſary, as Mr. *Hanmer* himſelf was no party to this litigation about the *mandamus*.

He therefore directed it to be drawn up to the following effect, (and indeed gave the very words:) *viz.*

It is ordered, That the firſt day of next term be given to *Pentecoſt Barker*, *Richard Dunning*, *Philip Coſkey*, and *Elias Lang*, to ſhew caufe why a writ of *mandamus* ſhould not iſſue, directed to them, requiring them to admit *Chriſtopher Mends* to the ufe of the pulpit in a certain meeting-houfe appointed for the religious worſhip of proteſtant diſſenters commonly called preſbyterians, in *Plymouth* in the county of *Devon*, as paſtor, miniſter or preacher there. And it is
further

further ordered, That they the said *Pentecoſt Barker, Richard Dunning, Philip Cockey,* and *Elias Lang,* do at the ſame time acquaint this court, " Whether they inſiſt upon the va-" lidity of the election of *John Hanmer,*" and if not " Whether they are willing to proceed to a new election of " a miniſter, paſtor or preacher there ;" The proſecutor of this rule having declared his conſent " To wave his claim, " in order to a new election." And it is further ordered, That *notice* of this rule be given to the ſaid *John Hanmer* ; to the intent that he may be heard, as he ſhall be adviſed ; and that he may acquaint this court " Whether he inſiſts upon the validity of his election, and " Whether he is willing to have it tried in a feigned iſſue."

Mr. THURLOW and Mr. DUNNING now gave an anſwer, by direction of their clients, " That *Pentecoſt Barker,* " *Richard Dunning, Philip Cockey,* and *Elias Lang, do inſiſt* " upon the validity of the election of *John Hanmer,* and " that they are *not willing* to proceed to a new election, *&c.* " And that the ſaid *John Hanmer does inſiſt* upon the vali-" dity of his election, and is *not willing* to have it tried in a " feigned iſſue."

After which Mr. THURLOW and Mr. DUNNING were heard again, in general ; and argued ſtrenuouſly againſt granting a *mandamus.* They knew, the election of *Hanmer* could not be ſupported upon a trial. The election of *Mends* ſeemed liable to objection as irregular. But, if the matter was *proper* for a *mandamus,* they were aware that in caſe *neither* was elected, the court would iſſue a *mandamus* " To proceed to an " election :" in which caſe, the majority of the congregation were inclined to *Mends.* The truſtees therefore obſtinately perſiſted in oppoſing a *mandamus* and refuſing a trial.

Lord MANSFIELD—Every reaſon concurs here, for granting a *mandamus.* We have conſidered the matter fully : and we are all clearly for granting it. I have made a collection of caſes on this ſubject, ſince the laſt argument : but I have it not here, at preſent.

Here is a *function,* with *emoluments* ; and no ſpecific legal remedy. The right depends upon election : which intereſts all the voters. The queſtion is of a nature to inflame men's paſſions. The refuſal to try the election in a feigned iſſue, or proceed to a new election, proves a determined purpoſe of violence. Should the court deny this remedy, the congregation may be tempted to reſiſt violence by force : a diſpute " *Who* ſhall preach chriſtian charity," may raiſe im-placable feuds and animoſities ; in breach of the public

D 2                                    peace,

1762.

Rex v.
Barker and
Another.

peace, to the reproach of government, and the fcandal of religion. To deny this writ, would be putting proteftant diffenters and their religious worfhip, out of the protection of the law. This cafe is *intitled* to that protection; and can not *have* it in any *other* mode, than by granting this writ.

The defendants have *refufed* either to go to a new election, or to try it in a feigned iffue.

We were, all of opinion, when a trial was propofed to them, that a *mandamus* ought to iffue, in cafe of refufal. Their anfwer ought to be put into the rule as prefatory to it: and I do this, with a view that their refufal may be authentically given in evidence to the jury upon a trial.

Many cafes have gone as far as this, or farther.

Mr. Juftice Denison, Mr. Juftice Foster, and Mr. Juftice Wilmot, all declared themfelves of the fame opinion.

The Court ordered a *mandamus* to iffue.
*V. Poft. Pa.* 1379, 1380. 28th *April* 1763.

---

(1 Black Rep.) 356. S. C. but not S. P.)

Monday, 25 Jan. 1762.

* Mr. Norton was this day knighted, and made folicitor general.

Joint information againft feveral defendants, cannot iffue upon diftinct rules for one or more information or informations againft each.

### Rex *verfus* Heydon *and four others.*

*Sir Fletcher Norton fhewed caufe on behalf of the profecutor, why the proceedings upon this *joint* information fhould not be ftayed, with cofts to be paid by the profecutor; for that five *feparate* rules " For one or more in- " formations againft each defendant" are *confolidated* into this *one joint* information, without any rule for fuch a joint information againft *all* of them.

Mr. Serjeant *Nares, contra,* infifted that by the practice, this can *not be done*; nor does the *prefent rule* juftify it.

Mr. Athorpe (fecondary) being afked, concurred with Mr. Serjeant *Nares,* " That there was no authority " by any rule, or by the practice, for filing this one " *joint* information againft *all* the defendants.

Sir *Fletcher Norton* replied, that if the *offence* be joint, there may be a joint information.

. Lord

# APPENDIX E

WILLIAM BLACKSTONE,
3 COMMENTARIES ON THE LAWS OF ENGLAND, 24-25
(3d ed. 1862).

792D-9

# COMMENTARIES

ON THE

# LAWS OF ENGLAND:

In four Books.

BY SIR WILLIAM BLACKSTONE, KNT.

ONE OF THE JUSTICES OF THE COURT OF COMMON PLEAS.

ADAPTED TO THE PRESENT STATE OF THE LAW,

BY ROBERT MALCOLM KERR, LL.D.

BARRISTER-AT-LAW, JUDGE OF THE SHERIFFS' COURTS OF THE CITY OF LONDON, AND
ONE OF THE COMMISSIONERS OF THE CENTRAL CRIMINAL COURT.

## VOL. III.

OF PRIVATE WRONGS.

*THIRD EDITION.*



LONDON:

JOHN MURRAY, ALBEMARLE STREET.

1862.

the one side or on the other, when they ought so to do. In this case a writ of *procedendo* shall be awarded, commanding them to proceed to judgment; but without specifying any particular judgment, for that (if erroneous) may be set aside on an appeal: and upon farther neglect or refusal, the judges of the inferior court may be punished for their contempt, by writ of attachment returnable in the Queen's Bench or Common Pleas.[f] 'This writ of *procedendo* is, however, rarely resorted to, the remedy by *mandamus* being preferable.'

**By the prerogative writ of mandamus.**

The 'prerogative' writ of *mandamus* ('for there is a writ of this name, which is, as we shall see afterwards, merely a writ of execution') is a command issuing in the name of the sovereign from the court of Queen's Bench, and directed to any person, corporation, or inferior court of judicature within the queen's dominions, requiring them to do some *particular* thing therein specified, which appertains to their office and duty, and which the court of Queen's Bench has previously determined, or at least supposes to be consonant to right and justice. It is a high prerogative writ, of a most extensively remedial nature; and may be issued in some cases where the injured party has also another more tedious method of redress, as in the case of admission or restitution to an office; but it issues in all cases where the party has a right to have anything done, and has no other specific means of compelling its performance. A *mandamus* therefore lies to compel the admission or restoration of the party applying to any office or franchise of a public nature, whether spiritual or temporal; to academical degrees; to the use of a meeting-house, &c.: for the production, inspection, or delivery of public books and papers; for the surrender of the *regalia* of a corporation; to oblige bodies corporate to affix their common seal; to compel the holding of a court; and for an infinite number of other purposes, which it is impossible to recite minutely.[g] But at present we are more particularly to remark, that it issues to

[f] F. N. B. 153, 154, 240.

[g] 'Originally confined in its operation to a very limited class of cases affecting the administration of public affairs, such as the election of corporate officers, the restoration of officers improperly removed, the compelling inferior courts to proceed in matters within their jurisdiction, or public officers to perform duties imposed upon them by common law or by statute, as to make a rate, this remedy has in modern times

the judges of any inferior court, commanding them to do justice according to the powers of their office, whenever the same is delayed. For it is the peculiar business of the court of Queen's Bench to superintend all inferior tribunals, and therein to enforce the due exercise of those judicial or ministerial powers with which the crown or legislature have invested them: and this not only by restraining their excesses, but also by quickening their negligence, and obviating their denial of justice. A *mandamus* may therefore be had to the courts of the city of London, to enter up judgment;[h] ' to the quarter sessions, to hear an appeal;' to the spiritual courts, to swear a churchwarden, and the like. This writ is grounded on a suggestion, by the oath of the party injured, of his own right, and the denial of justice below: whereupon, in order more fully to satisfy the court that there is a probable ground for such interposition, a rule is made (except in some cases, where the probable ground is manifest),[i] directing the party complained of to show cause why a writ of *mandamus* should not issue: and, if he shows no sufficient cause, the writ itself is issued, at first in the alternative, either to do thus, or signify some reason to the contrary; to which a return, or answer, must be made at a certain day. And, if the inferior judge, or other person to whom the writ is directed, returns or signifies an insufficient reason, then there issues in the second place a *peremptory mandamus*, to do the thing absolutely: to which no other return will be admitted, but a certificate of perfect obedience and due execution of the writ. If the inferior judge or other person makes no return, or fails in his respect and obedience, he is punishable for his contempt by attachment. ' If the writ be bad on the face of it, as not suggesting a case which justifies its mandatory part, the defendant may apply to the

[ 111 ]

Proceedings on a mandamus.

been extended to cases, in which the rights of private individuals only have been concerned. In every session of Parliament, especially of late years, a great number of Acts are passed for making railways or docks, for improving towns, or for other public works, to be done generally by joint-stock companies; and in almost every Act of this kind there are provisions directing the company to do certain works, such as making communications between lands intersected by railways or canals, substituting new buildings for others which are to be removed, making new roads in lieu of old ones blocked up or injured, and other works of a similar character. In the event of non-compliance with these enactments, the party must proceed by *mandamus*.'

[h] Raym. 214.
[i] Com. Law Proc. Act, 1854, s. 76.

# APPENDIX F

SENATE COMMITTEE ON CRIMINAL JUSTICE,
BILL ANALYSIS, S.B. 1611, 83rd Leg., R.S. (2013).

# BILL ANALYSIS

Senate Research Center

S.B. 1611
By: Ellis et al.
Criminal Justice
3/25/2013
As Filed

## AUTHOR'S / SPONSOR'S STATEMENT OF INTENT

Criminal discovery—the exchange of relevant information between prosecutors and the defense prior to trial—is both necessary for a fair and just criminal justice system, and also required as part of a defendant's constitutional right to a full defense.

*Brady v. Maryland* requires prosecutors to turn over to the defense any evidence that is relevant to the defendant's case. However, *Brady* is vague and open to interpretation, resulting in different levels of discovery across different counties in Texas. That is why a uniform discovery statute is needed. S.B. 1611 will save attorney resources as well as taxpayer dollars by limiting discovery disputes and increasing efficient resolution of cases, all while reducing the likelihood of costly appeals and wrongful convictions.

S.B. 1611 requires prosecutors to turn over to the defense any relevant evidence that may help the defendant, including witness lists. The defense also has a reciprocal obligation to turn over certain information to the prosecution. S.B. 1611 also clearly defines what is considered to be privileged work product so that there is no question as to what is considered confidential.

Open file discovery is important for several reasons. First, it promotes efficiency in the criminal justice system. A defendant who understands the extent of the evidence against him can make an informed decision to plead. It also allows for a full defense, lessening the likelihood of an overturned verdict on appeal. The state saves thousands of dollars in appeals, incarceration, and potential compensation for wrongful convictions.

Open file discovery also ensures that each defendant is guaranteed his constitutional right to a defense, regardless of where he is charged. A defendant's chances to a fair trial often vary according to jurisdiction, because of the lack of a uniform discovery law. A statewide criminal discovery policy ensures that no matter where a defendant is on trial, he is guaranteed to all the protections afforded to him by the Constitution.

Most importantly, S.B. 1611 helps prevent wrongful convictions. Recent high profile cases in Texas show that with open file discovery, the likelihood that evidence relevant to the defendant's innocence would have been revealed is increased. Every defendant should have access to all the evidence relevant to his guilt or innocence, with adequate time to examine it. The state also saves billions of dollars in ensuring that the defendants sent to prison are actually guilty. Finally, public safety is threatened if an innocent person is in prison while the guilty party goes free.

S.B. 1611 will uphold a defendant's constitutional right to a defense, minimize the likelihood of wrongful convictions, save thousands in taxpayer dollars, promote an efficient justice system, and improve public safety, all while increasing the public's confidence in the criminal justice system.

As proposed, S.B. 1611 amends current law relating to discovery in a criminal case.

## RULEMAKING AUTHORITY

This bill does not expressly grant any additional rulemaking authority to a state officer, institution, or agency.

## SECTION BY SECTION ANALYSIS

SECTION 1. Amends Article 39.14, Code of Criminal Procedure, is amended, as follows:

### Art. 39.14. DISCOVERY

Sec. 1. DISCLOSURE BY STATE. (a) Requires the attorney representing the state, subject to the restrictions provided by Article 39.15 (Discovery of Evidence Depicting or Describing Abuse of or Sexual Conduct by Child or Minor), beginning no later than 30 days after the initial appearance of the defendant, to disclose to the defendant's counsel and permit inspection, photocopying, and photographing of the following materials and information in the possession, custody, or control of all law enforcement agencies, investigatory agencies, and prosecutors' offices, any other governmental entity, or any non-governmental entity contracting for work with any government entity involved in the investigation of the crimes alleged or in the prosecution of the defendant,

(1) any evidence relevant to the defendant's guilt or punishment;

(2) any written or recorded statement made by the defendant, any witness, any law enforcement officer, or any other person that is related to the case charged, including offense reports by law enforcement or other government personnel and electronically recorded statements, if any;

(3) any written record containing the substance of any oral statement that is made by the defendant and that is related to the case charged;

(4) the defendant's prior criminal record. Provides that if disclosure of a specific document reflecting the defendant's criminal history is not permitted by state or federal law, then the content of the defendant's criminal history is required to be disclosed in writing. Requires a judge to on request issue an order requiring disclosure of the records if a court order is required for disclosure by state or federal law;

(5) any record of a criminal conviction or other criminal history admissible for impeachment under the Texas Rules of Evidence, of a witness the attorney representing the state intends to call at the trial, or has reason to believe may be called as a witness at trial by the state;

(6) any affidavit, warrant, or return pertaining to a search or seizure in connection with the case;

(7) any physical or documentary evidence related to the case charged that was obtained from or that belongs to the defendant or that the attorney representing the state intends to use against the defendant in the case charged and, on a showing of materiality by the defendant, the opportunity to test that evidence;

(8) the names and addresses of the witnesses called to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence;

(9) any document or recording produced by or for an expert witness related to the case charged; and

(10) any plea agreement, grant of immunity, benefit promised or conferred, or other agreement for testimony or assistance issued by the attorney representing the state or any law enforcement officer or agency in connection with the case.

Deletes existing text requiring the court in which an action is pending, upon motion of the defendant showing good cause therefor and upon

notice to the other parties, except as provided by Article 39.15, to order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the defendant of any designated documents, papers, written statement of the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the state or any of its agencies. Deletes existing text requiring the order to specify the time, place, and manner of making the inspection and taking the copies and photographs of any of the aforementioned documents or tangible evidence; provided, however, that the rights herein granted are not required to extend to written communications between the state or any of its agents or representatives or employees. Deletes existing text providing that nothing in this Act is required to authorize the removal of such evidence from the possession of the state, and that any inspection is required to be in the presence of a representative of the state.

(b) Requires the state to give to the defendant, at the beginning of jury selection, a written list of the names of all witnesses who the state reasonably expects to call during trial, as well as the criminal histories of those witnesses, in a manner consistent with state and federal law. Authorizes any party, following the disclosure of a witness's name, to request the court to order, on a showing of good cause, the disclosure of the last known address for the witness. Provides that a court, on request, is authorized to, and on a showing of a good cause, is required to order earlier disclosure of the names and addresses of all witnesses who the state reasonably expects to call during trial.

Deletes existing text authorizing the court in which an action is pending, on motion of a party and on notice to the other parties, to order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party is authorized to use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. Deletes existing text requiring the court to specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in which the other party is required to make disclosure, the court is required to require the other party to make the disclosure not later than the 20th day before the date the trial begins.

(c) Requires the attorney representing the state, if the defendant gives notice of an alibi under Section 2(c)(2), to disclose to the defendant's counsel as soon as practicable the names of the witnesses of whom the state has knowledge and whom the state intends to use to rebut the alibi or the testimony of any of the defendant's witnesses called to establish the alibi.

(d) Requires law enforcement and investigatory agencies, on a timely basis, to make available to the attorney representing the state and requires the attorney representing the state to request a complete copy of the complete files related to the investigation of the crimes committed or the prosecution of the defendant for compliance with this article. Requires investigatory agencies that obtain information and materials listed in Subsection (a) of this section to ensure that such information and materials are fully disclosed to the prosecutor's office on a timely basis for disclosure to the defendant.

(e) Provides that, except as otherwise permitted by this article, this article does not authorize the removal of physical evidence from the possession of the state, and any inspection of physical evidence is required to be conducted in the presence of a representative of the state. Requires a court to, when requested and

as necessary under the circumstances, order specific inspection procedures necessary to protect the integrity of the evidence and the ability to inspect it in a manner that does not compromise a defendant's ability to maintain confidentiality of work product and the attorney client privilege.

Sec. 2. DISCLOSURE BY DEFENDANT. (a) Requires the defendant, after receiving the initial disclosure under Section 1 from the attorney representing the state, to disclose to the attorney representing the state and permit inspection, photocopying, and photographing of the following materials and information:

> (1) any written or recorded statement by a witness, other than the defendant, that is related to the offense charged, if the defendant intends to call the witness at trial;

> (2) any physical or documentary evidence that the defendant intends to use in its case in chief and, on a showing of materiality by the attorney representing the state, the opportunity to test that evidence;

> (3) the names and addresses of the witnesses called to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence; and

> (4) any report produced by or for an expert witness the defendant intends to call at the trial.

(b) Requires the defense to give the state, at the beginning of jury selection, a written list of the names of all lay witnesses who the defense reasonably expect to call during trial. Authorizes any party, following the disclosure of a witnesses name, to request the court to order, on a showing of good cause, the disclosure of the last known address for the witness.

(c) (1) Requires a defendant who is authorized to assert one or more defenses or affirmative defenses listed in Chapter 8 (General Defenses to Criminal Responsibility) or 9 (Justification Excluding Criminal Responsibility), Penal Code, if requested in writing by the attorney representing the state, to provide the state with written notice that the defendant is authorized to assert the statutory defense or affirmative defense. Requires that notice be provided by the defendant not later than the 30th day before the date that jury selection begins, or as soon as practicable after the date the defendant receives a disclosure under Section 1 to which the defense is responsive, whichever is later. Requires the defendant, if the state amends the information or indictment or files a new information or obtains a new indictment within 30 days of the beginning of jury selection, to be allowed not less than 10 days after being served with an amended or new information or indictment, or having received actual notice of the amendment in open court, to amend or supplement an existing notice or provide an initial notice. Provides that any notice provided under this subsection is for purposes of discovery only and is not admissible at trial.

> (2) Requires a defendant who will assert an alibi, if requested in writing by the attorney representing the state, and if the attorney representing the state provides the defendant in such written request with the specific date, time, and place of the alleged offense, to provide the state, not later than 20 days before the beginning of jury selection, a written response including the location at which the defendant claims to have been at the time of the alleged offense and the names of the witnesses the defendant intends to use to establish the alibi.

Sec. 3. EXCEPTIONS TO DISCLOSURE. (a) Provides that neither the attorney representing the state nor the defendant is required to disclose materials or information that is:

(1) recorded proceedings of a grand jury, except as required by the Texas Rules of Evidence, other law, or court order;

(2) a work product, meaning written materials drafted by an attorney or the attorney's legal staff for their own use, including witness examinations, voir dire questions, opening statements, closing arguments, legal research, or of records, correspondence, reports, memoranda, or notes prepared by the attorney or by members of the attorney's legal staff to the extent they contain the opinions, theories, strategies, or conclusions of the attorney or the attorney's legal staff. Provides that records, correspondence, reports, memoranda, or notes prepared by the prosecuting attorney, its agents, or by members of the prosecuting attorney's legal staff are not work product as to any portion that contains potentially favorable or exculpatory or impeaching information as to guilt or punishment or information that may mitigate punishment. Provides that disclosure is also not required of any document of the attorney representing the defendant, or an investigator or other agent of the attorney representing the defendant that is made in connection with the investigation, prosecution, or defense of the case; or

(3) privileged under a rule of evidence, an express statutory provision, the Texas Constitution, or the United States Constitution.

(b) Provides that this article does not authorize disclosure of the name, address, or telephone number of a victim in violation of Chapter 57 (Confidentiality of Identifying Information of Sex Offense Victims).

(c) Requires a victim impact statement to be provided to the defendant at the beginning of jury selection if the person completing the victim impact statement is disclosed by the state as a potential witness on its witness list or there is reason to believe that the person is authorized to otherwise testify at the trial. Provides that a victim impact statement is subject to disclosure as any other evidence or information if it contains exculpatory material.

Sec. 4. CONTINUING DUTY TO DISCLOSE. Requires the party, if, subsequent to compliance with this article or a relevant court order, a party discovers additional material or information subject to disclosure, to immediately notify the other party's counsel of the existence of the additional material or information.

Sec. 5 CERTIFICATE OF COMPLIANCE. Requires a party, each time a party provides discovery, disclosure, or notice required or permitted by this article or pursuant to court order, to file with the court a Certificate of Compliance listing the items provided or disclosed or the notice given. Authorizes any party to request any other party to acknowledge receipt of any discovery, disclosure or notice provided for by this article or required by court order and the party receiving such discovery, disclosure, or notice to, when requested, acknowledge in writing, or on the record in open court, the receipt of any discovery, disclosure, or notice. Requires the other party, on request of any party, to certify either in writing or on the record in open court that, to the best of its knowledge and after reasonable inquiry, the party has disclosed and made available all items subject to discovery and disclosure and has provided all required notices, and if not previously identified in a Certificate of Compliance is required to identify each item of provided discovery, disclosure and notice. Requires an additional or supplemental Certificate of Compliance, if further discovery is provided after the filing of a Certificate of Compliance, to be filed with the court, or announced on the record in open court, identifying the additional items of discovery, matters or information disclosed, or notice given.

Sec. 6. EXCISION. (a) Provides that, except as provided by Subsection (b), if a portion of material or information is subject to discovery under this article and a portion is not subject to discovery, only the portion that is subject to discovery must be disclosed. Requires the disclosing party to inform the other party's counsel that the portion of

material or information that is not subject to discovery has been excised and withheld. Requires the court, on request, to conduct a hearing to determine whether the reasons for excision are justifiable. Requires that material or information excised pursuant to judicial order be sealed and preserved in the records of the court and to be made available to an appellate court in the event of an appeal.

(b) Provides that excision of a witness statement produced in accordance with the Texas Rules of Evidence is governed by that rule.

Sec. 7. PROTECTIVE ORDERS. Authorizes the court, on a showing of good cause by either party, to, at any time, enter an appropriate protective order that a specified disclosure be denied, restricted, or deferred. Defines "good cause."

Sec. 8. IN CAMERA PROCEEDINGS. Authorizes the court, on request, to permit to be made in camera an excision hearing under Section 5(a), a showing of good cause for denial or regulation of a disclosure under Section 6, or any portion of a proceeding. Requires a verbatim record to be made of a proceeding in camera. Requires the entire record, if the court excises a portion of the material or information or enters an order granting relief following a showing of good cause, to be sealed and preserved in the records of the court and to be made available to an appellate court in the event of an appeal.

Requires a court to permit counsel for both parties to be present at the in-camera excision hearing, or, for portions of the in-camera excision hearing as the circumstances require, unless doing so would result in a violation of a privilege under the Rules of Evidence or if the court cannot, through a protective or confidentiality order, achieve the purposes of the in-camera hearing. Authorizes the court to issue such protective and confidentiality orders as are necessary to prevent dissemination of proceedings held in-camera and as to any material excised. Requires a court order under this section to only be as narrow as necessary to achieve the purposes of the excision.

Sec. 9. CONFERENCE. Requires the court, on request or motion of any party or on its own motion, to hold a discovery conference to resolve any discovery, disclosure, or notice issue, to ensure that the parties are aware of their respective discovery, disclosure, and notice obligations under this article, or to verify compliance by each party with this article. Requires that any party who has not received required or requested discovery, disclosure, or notice, request a discovery conference to be held not later than 20 days before the beginning of jury selection to resolve any issue with respect to the discovery, disclosure, or notice.

Sec. 10. COMPLIANCE; SANCTIONS. (a) Authorizes the disclosures required under this article to be performed in any manner that is mutually agreeable to the attorney representing the state and the attorney representing the defendant or that is ordered by the court in accordance with this article. Authorizes the order issued by the court to specify the time, place, and manner of making the required disclosures.

(b) Authorizes the court, if the court finds that a party has failed to comply with any of the provisions of this article, to order and compel such party to provide the required discovery or disclosure, grant a continuance, issue a protective order, take other appropriate action as necessary under the circumstances to accomplish the purposes of the required discovery or disclosure, or, and only if other remedial alternatives have been exhausted, prohibit the introduction of certain evidence, the calling of certain witnesses, or other relief necessary to assure justice. Prohibits the court from dismissing a charge under this subsection unless authorized or required to do so by other law.

Sec. 11. COSTS. (a) Requires that all reasonable and necessary costs related to a disclosure required under this article, including the photocopying of materials, be paid by the requesting party, except that an indigent defendant to not be required to pay costs

provided for by this article. Prohibits costs under this article from exceeding those provided for by the Texas Public Information Act.

(b) Prohibits the commissioners court of the county in which the indictment, information, or complaint is pending from, as a result of any payment by the defendant of the costs required by this article, reducing the amount of money provided by the county to the office of the attorney representing the state, or reducing the amount of money provided to a public defender's office as a result of costs paid to it under this article.

Sec. 12. DISCLOSURE TO THIRD PARTIES. Prohibits the attorney representing the state, the attorney representing the defendant, or an investigator, expert, or other agent for the attorney representing the state or the attorney representing the defendant, before the date on which the trial begins, from disclosing, without obtaining approval of the trial court, information or witness statements received from the opposing party to any third party, other than to an investigator, expert, consulting counsel, or other agent for the attorney representing the state or the attorney representing the defendant, as applicable. Prohibits information or witness statements received under this article, and not otherwise made a part of a public record as part of judicial proceedings, from being made available to the public without a court order permitting such disclosure.

Sec. 13. DISCLOSURE OF CERTAIN CONTACT INFORMATION. (a) Authorizes the attorney representing the state, without a protective court order or a hearing before the court, to excise from an offense report or other report any contact information of the alleged victim of an offense that is listed under Section 3g, Article 42.12, or Article 62.001(5).

(b) Requires the court, on request of the defendant, and on a showing of good cause, to order disclosure to the defense of the alleged victim's contact information subject to reasonable limitations on further disclosure, which may include, as the circumstances require, an order prohibiting the attorney representing the defendant from disclosing the information to the defendant or others.

Sec. 14. PRO SE DEFENDANTS. Provides that this article, including the provisions regarding the nondisclosure of a witness statement or an offense report by law enforcement personnel, applies to a defendant who has elected to proceed pro se only to the extent approved by the court.

Sec. 15. THIRD PARTY DISCOVERY. Authorizes a party to obtain, other than from the office of the attorney representing the state, and other than documents or items provided by the attorney representing the state, documents from other persons, entities or third parties by serving such person or entity with a subpoena for such documents that provides a reasonable time and place for production of the documents. Authorizes a person or entity served with such a subpoena to, itself or through its counsel, before the time for compliance, object to or seek protection from the request. Authorizes the court to enter any order appropriate under the circumstances to assure a reasonable time, place, manner, or scope of production. Requires costs for production, unless the court orders otherwise, to be paid by the party requesting the production, provided that such costs are prohibited from exceeding those allowed under the Texas Public Information Act.

Sec. 16. CONFLICT OF LAW. Provides that to the extent of any conflict, this article prevails over Chapter 552 (Public Information), Government Code.

SECTION 2. Provides that the change in law made by this Act applies to the prosecution of an offense committed on or after the effective date of this Act and to any prosecution initiated after the effective date of this Act. Provides that the prosecution of an offense committed before the effective date of this Act and the prosecution of an action initiated before the effective date of this Act is covered by the law in effect when the offense was committed or the prosecution commenced, and the former law is continued in effect for this purpose. Provides that, for

purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date and a prosecution is commenced before the effective date of this Act if a complaint, information or indictment has been filed or obtained by the attorney representing the state and the defendant has been arrested for such offense before the effective date of this Act.

SECTION 3. Effective date: January 1, 2014.

# APPENDIX G

S.B. 1611, INTRODUCED VERSION, March 8, 2013.

By:  Ellis, Duncan                                    S.B. No. 1611

A BILL TO BE ENTITLED

AN ACT

relating to discovery in a criminal case.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Article 39.14, Code of Criminal Procedure, is amended to read as follows:

Art. 39.14.  DISCOVERY

Sec. 1. DISCLOSURE  BY  STATE.  (a)  Subject  to  the restrictions provided by Article 39.15, beginning no later than 30 days after the initial appearance of the defendant the attorney representing the state shall disclose to the defendant's counsel and permit inspection, photocopying, and photographing of the following materials and information in the possession, custody, or control of all law enforcement agencies, investigatory agencies, and prosecutors' offices, any other governmental entity, or any non-governmental entity contracting for work with any government entity involved in the investigation of the crimes alleged or in the prosecution of the defendant,

(1)  any evidence relevant to the defendant's guilt or punishment;

(2)  any written  or  recorded  statement  made  by  the defendant, any witness, any law enforcement officer, or any other person that is related to the case charged, including offense reports by law enforcement or other government personnel and electronically recorded statements, if any;

1

(3) any written record containing the substance of any oral statement that is made by the defendant and that is related to the case charged;

(4) the defendant's prior criminal record. If disclosure of a specific document reflecting the defendant's criminal history is not permitted by state or federal law, then the content of the defendant's criminal history shall be disclosed in writing. A judge shall on request issue an order requiring disclosure of the records if a court order is required for disclosure by state or federal law;

(5) any record of a criminal conviction or other criminal history admissible for impeachment under the Texas Rules of Evidence, of a witness the attorney representing the state intends to call at the trial, or has reason to believe may be called as a witness at trial by the State;

(6) any affidavit, warrant, or return pertaining to a search or seizure in connection with the case;

(7) any physical or documentary evidence related to the case charged that was obtained from or that belongs to the defendant or that the attorney representing the state intends to use against the defendant in the case charged and, on a showing of materiality by the defendant, the opportunity to test that evidence;

(8) the names and addresses of the witnesses called to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence;

(9) any document or recording produced by or for an

expert witness related to the case charged; and

(10) any plea agreement, grant of immunity, benefit promised or conferred, or other agreement for testimony or assistance issued by the attorney representing the state or any law enforcement officer or agency in connection with the case. [Upon motion of the defendant showing good cause therefor and upon notice to the other parties, except as provided by Article 39.15, the court in which an action is pending shall order the State before or during trial of a criminal action therein pending or on trial to produce and permit the inspection and copying or photographing by or on behalf of the defendant of any designated documents, papers, written statement of the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies. The order shall specify the time, place and manner of making the inspection and taking the copies and photographs of any of the aforementioned documents or tangible evidence; provided, however, that the rights herein granted shall not extend to written communications between the State or any of its agents or representatives or employees. Nothing in this Act shall authorize the removal of such evidence from the possession of the State, and any inspection shall be in the presence of a representative of the State.]

(b) The state shall give to the defendant, at the beginning

of jury selection, a written list of the names of all witnesses who the State reasonably expects to call during trial, as well as the criminal histories of those witnesses, in a manner consistent with state and federal law. Following the disclosure of a witnesses name, any party may request the court to order, on a showing of good cause, the disclosure of the last known address for the witness. A court, on request, may, and on a showing of good cause shall, order earlier disclosure of the names and addresses of all witnesses who the State reasonably expects to call during trial. [On motion of a party and on notice to the other parties, the court in which an action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. The court shall specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in which the other party shall make disclosure the court shall require the other party to make the disclosure not later than the 20th day before the date the trial begins].

(c) If the defendant gives notice of an alibi under Section 2(c)(2), the attorney representing the state shall disclose to the defendant's counsel as soon as practicable the names of the witnesses of whom the state has knowledge and whom the state intends to use to rebut the alibi or the testimony of any of the defendant's witnesses called to establish the alibi.

(d) On a timely basis, law enforcement and investigatory agencies shall make available to the attorney representing the

4

state and the attorney representing the state shall request a complete copy of the complete files related to the investigation of the crimes committed or the prosecution of the defendant for compliance with this article. Investigatory agencies that obtain information and materials listed in subsection (a) of this section shall ensure that such information and materials are fully disclosed to the prosecutor's office on a timely basis for disclosure to the defendant.

(e) Except as otherwise permitted by this article, this article does not authorize the removal of physical evidence from the possession of the state, and any inspection of physical evidence shall be conducted in the presence of a representative of the state. A court shall, when requested and as necessary under the circumstances, order specific inspection procedures necessary to protect the integrity of the evidence and the ability to inspect it in a manner that does not compromise a defendant's ability to maintain confidentiality of work product and the attorney client privilege.

Sec. 2. DISCLOSURE BY DEFENDANT. (a) After receiving the initial disclosure under Section 1 from the attorney representing the state, the defendant shall disclose to the attorney representing the state and permit inspection, photocopying, and photographing of the following materials and information:

(1) any written or recorded statement by a witness, other than the defendant, that is related to the offense charged, if the defendant intends to call the witness at trial;

(2) any physical or documentary evidence that the

defendant intends to use in its case in chief and, on a showing of materiality by the attorney representing the state, the opportunity to test that evidence;

(3)  the names and addresses of the witnesses called to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence; and

(4)  any report produced by or for an expert witness the defendant intends to call at the trial.

(b)  The defense shall give the state, at the beginning of jury selection, a written list of the names of all lay witnesses who the defense reasonably expect to call during trial. Following the disclosure of a witnesses name, any party may request the court to order, on a showing of good cause, the disclosure of the last known address for the witness.

(c)  (1) If requested in writing by the attorney representing the state, a defendant who may assert one or more defenses or affirmative defenses listed in Chapter 8 or 9, Penal Code, shall provide the state with written notice that the defendant may assert the statutory defense or affirmative defense.  Notice shall be provided by the defendant not later than the 30th day before the date that jury selection begins or as soon as practicable after the date the defendant receives a disclosure under Section 1 to which the defense is responsive, whichever is later.  If the State amends the information or indictment or files a new information or obtains a new indictment within 30 days of the beginning of jury selection, the defendant shall be allowed not less than 10 days after being served with an amended or new information or indictment, or having

received actual notice of the amendment in open court, to amend or supplement an existing notice or provide an initial notice. Any notice provided under this subsection is for purposes of discovery only and is not admissible at trial.

(2) If requested in writing by the attorney representing the state, and if the attorney representing the state provides the defendant in such written request with the specific date, time, and place of the alleged offense, a defendant who will assert an alibi shall provide the state, not later than 20 days before the beginning of jury selection, a written response including the location at which the defendant claims to have been at the time of the alleged offense and the names of the witnesses the defendant intends to use to establish the alibi.

Sec. 3. EXCEPTIONS TO DISCLOSURE. (a) Neither the attorney representing the state nor the defendant is required to disclose materials or information that is:

(1) recorded proceedings of a grand jury, except as required by the Texas Rules of Evidence, other law, or court order;

(2) a work product, meaning written materials drafted by an attorney or the attorney's legal staff for their own use, including witness examinations, voir dire questions, opening statements, closing arguments, legal research, or of records, correspondence, reports, memoranda, or notes prepared by the attorney or by members of the attorney's legal staff to the extent they contain the opinions, theories, strategies, or conclusions of the attorney or the attorney's legal staff. Records, correspondence, reports, memoranda, or notes prepared by

the prosecuting attorney, its agents, or by members of the prosecuting attorney's legal staff are not work product as to any portion that contains potentially favorable or exculpatory or impeaching information as to guilt or punishment or information that may mitigate punishment. Disclosure is also not required of any document of the attorney representing the defendant, or an investigator or other agent of the attorney representing the defendant that is made in connection with the investigation, prosecution, or defense of the case; or

(3) privileged under a rule of evidence, an express statutory provision, the Texas Constitution, or the United States Constitution.

(b) This article does not authorize disclosure of the name, address, or telephone number of a victim in violation of Chapter 57.

(c) A victim impact statement shall be provided to the defendant at the beginning of jury selection if the person completing the victim impact statement is disclosed by the State as a potential witness on its witness list or there is reason to believe that the person may otherwise testify at the trial. A victim impact statement is subject to disclosure as any other evidence or information if it contains exculpatory material.

Sec. 4. CONTINUING DUTY TO DISCLOSE. If, subsequent to compliance with this article or a relevant court order, a party discovers additional material or information subject to disclosure, the party shall immediately notify the other party's counsel of the existence of the additional material or information.

Sec. 5 CERTIFICATE OF COMPLIANCE. Each time a party

provides discovery, disclosure, or notice required or permitted by this article or pursuant to court order, it shall file with the court a Certificate of Compliance listing the items provided or disclosed or the notice given. Any party may request any other party to acknowledge receipt of any discovery, disclosure or notice provided for by this article or required by court order and the party receiving such discovery, disclosure, or notice shall, when requested, acknowledge in writing, or on the record in open court, the receipt of any discovery, disclosure, or notice. On request of any party, the other party shall certify either in writing or on the record in open court that, to the best of its knowledge and after reasonable inquiry, the party has disclosed and made available all items subject to discovery and disclosure and has provided all required notices, and if not previously identified in a Certificate of Compliance shall identify each item of provided discovery, disclosure and notice. If further discovery is provided after the filing of a Certificate of Compliance, an additional or supplemental Certificate of Compliance shall be filed with the court, or announced on the record in open court, identifying the additional items of discovery, matters or information disclosed, or notice given.

Sec. 6. EXCISION. (a) Except as provided by Subsection (b), if a portion of material or information is subject to discovery under this article and a portion is not subject to discovery, only the portion that is subject to discovery must be disclosed. The disclosing party shall inform the other party's counsel that the portion of material or information that is not subject to discovery

has been excised and withheld. On request, the court shall conduct a hearing to determine whether the reasons for excision are justifiable. Material or information excised pursuant to judicial order shall be sealed and preserved in the records of the court and shall be made available to an appellate court in the event of an appeal.

(b) Excision of a witness statement produced in accordance with the Texas Rules of Evidence is governed by that rule.

Sec. 7. PROTECTIVE ORDERS. On a showing of good cause by either party the court may at any time enter an appropriate protective order that a specified disclosure be denied, restricted, or deferred. "Good cause," for purposes of this section, includes threats, harm, intimidation, or possible danger to the safety of a victim or witness, possible loss, destruction, or fabrication of evidence, or possible compromise of other investigations by law enforcement or a defense offered by a defendant.

Sec. 8. IN CAMERA PROCEEDINGS. On request, the court may permit to be made in camera an excision hearing under Section 5(a), a showing of good cause for denial or regulation of a disclosure under Section 6, or any portion of a proceeding. A verbatim record shall be made of a proceeding in camera. If the court excises a portion of the material or information or enters an order granting relief following a showing of good cause, the entire record shall be sealed and preserved in the records of the court and shall be made available to an appellate court in the event of an appeal.

A court shall permit counsel for both parties to be present at the in-camera excision hearing, or, for portions of the

in-camera excision hearing as the circumstances require, unless doing so would result in a violation of a privilege under the Rules of Evidence or if the court cannot, through a protective or confidentiality order, achieve the purposes of the in-camera hearing. The court may issue such protective and confidentiality orders as are necessary to prevent dissemination of proceedings held in-camera and as to any material excised. A court order under this section must only be as narrow as necessary to achieve the purposes of the excision.

Sec. 9. CONFERENCE. On request or motion of any party or on its own motion, the court shall hold a discovery conference to resolve any discovery, disclosure, or notice issue, to ensure that the parties are aware of their respective discovery, disclosure, and notice obligations under this article, or to verify compliance by each party with this article. Any party who has not received required or requested discovery, disclosure, or notice, shall request a discovery conference to be held not later than 20 days before the beginning of jury selection to resolve any issue with respect to the discovery, disclosure, or notice.

Sec. 10. COMPLIANCE; SANCTIONS. (a) The disclosures required under this article may be performed in any manner that is mutually agreeable to the attorney representing the state and the attorney representing the defendant or that is ordered by the court in accordance with this article. The order issued by the court may specify the time, place, and manner of making the required disclosures.

(b) If the court finds that a party has failed to comply with

any of the provisions of this article, the court may order and compel such party to provide the required discovery or disclosure, grant a continuance, issue a protective order, take other appropriate action as necessary under the circumstances to accomplish the purposes of the required discovery or disclosure, or, and only if other remedial alternatives have been exhausted, prohibit the introduction of certain evidence, the calling of certain witnesses, or other relief necessary to assure justice. The court may not dismiss a charge under this subsection unless authorized or required to do so by other law.

Sec. 11. COSTS. (a) All reasonable and necessary costs related to a disclosure required under this article, including the photocopying of materials, shall be paid by the requesting party, except that an indigent defendant shall not be required to pay costs provided for by this article. Costs under this article may not exceed those provided for by the Texas Public Information Act.

(b) The commissioners court of the county in which the indictment, information, or complaint is pending may not, as a result of any payment by the defendant of the costs required by this article, reduce the amount of money provided by the county to the office of the attorney representing the state, nor may it reduce the amount of money provided to a public defender's office as a result of costs paid to it under this article.

Sec. 12. DISCLOSURE TO THIRD PARTIES. Before the date on which the trial begins, the attorney representing the state, the attorney representing the defendant, or an investigator, expert, or other agent for the attorney representing the state or the attorney

representing the defendant may not disclose, without obtaining approval of the trial court, information or witness statements received from the opposing party to any third party, other than to an investigator, expert, consulting counsel, or other agent for the attorney representing the state or the attorney representing the defendant, as applicable. Information or witness statements received under this article, and not otherwise made a part of a public record as part of judicial proceedings, may not be made available to the public without a court order permitting such disclosure.

Sec. 13. DISCLOSURE OF CERTAIN CONTACT INFORMATION. (a) The attorney representing the state, without a protective court order or a hearing before the court, may excise from an offense report or other report any contact information of the alleged victim of an offense that is listed under:

(1) Section 3g, Article 42.12; or

(2) Article 62.001(5).

(b) On request of the defendant, and on a showing of good cause, the court shall order disclosure to the defense of the alleged victim's contact information subject to reasonable limitations on further disclosure, which may include, as the circumstances require, an order prohibiting the attorney representing the defendant from disclosing the information to the defendant or others.

Sec. 14. PRO SE DEFENDANTS. This article, including the provisions regarding the nondisclosure of a witness statement or an offense report by law enforcement personnel, applies to a defendant

who has elected to proceed pro se only to the extent approved by the court.

Sec. 15.  THIRD PARTY DISCOVERY.  A party may obtain, other than from the office of the attorney representing the State, and other than documents or items provided by the attorney representing the state, documents from other persons, entities or third parties by serving such person or entity with a subpoena for such documents that provides a reasonable time and place for production of the documents. A person or entity served with such a subpoena may itself or through its counsel, before the time for compliance, object to or seek protection from the request. The court may enter any order appropriate under the circumstances to assure a reasonable time, place, manner, or scope of production. Unless the court orders otherwise, costs for production shall be paid by the party requesting the production, provided that such costs shall not exceed those allowed under the Texas Public Information Act.

Sec. 16.  CONFLICT OF LAW.  To the extent of any conflict, this article prevails over Chapter 552, Government Code.

SECTION 2.  The change in law made by this Act applies to the prosecution of an offense committed on or after the effective date of this Act and to any prosecution initiated after the effective date of this Act.  The prosecution of an offense committed before the effective date of this Act and the prosecution of an action initiated before the effective date of this Act is covered by the law in effect when the offense was committed or the prosecution commenced, and the former law is continued in effect for this purpose.  For purposes of this section, an offense is committed

before the effective date of this Act if any element of the offense occurs before the effective date and a prosecution is commenced before the effective date of this Act if a complaint, information or indictment has been filed or obtained by the attorney representing the state and the defendant has been arrested for such offense before the effective date of this Act.

SECTION 3. This Act takes effect January 1, 2014.

# APPENDIX H

TEXAS APPLESEED & TEXAS DEFENDER SERVICE, TOWARDS MORE TRANSPARENT JUSTICE: THE MICHAEL MORTON ACT'S FIRST YEAR 27 (2015).



# Towards More Transparent Justice

## The Michael Morton Act's First Year



The cover image depicts a blue bandanna that was recovered from the vicinity of Michael Morton's home the morning after his wife, Christine Morton, was murdered. Although no physical evidence connected Michael to the crime, Michael was charged with and eventually convicted of this offense. Throughout his case, prosecutors withheld other evidence collected during the original investigation that pointed towards Michael's innocence. Michael served twenty-five years in prison before DNA testing obtained by the Innocence Project in 2011 of this bandanna cleared his name and implicated the true perpetrator: Mark Alan Norwood, who was subsequently convicted of this crime.

In 2013, the 83rd Texas legislature passed the Michael Morton Act to prevent future wrongful convictions and reinforce public trust in the criminal justice system.

The authors would like to extend our deep thanks to the Innocence Project for the use of this image.

First Edition © 2015, Texas Appleseed and Texas Defender Service. All rights reserved, except as follows: Free copies of this report may be made for personal use. Reproduction of more than five (5) copes for personal use and reproduction for commercial use are prohibited without the written permission of the copyright owners. The work may be accessed for reproduction pursuant to these restrictions.

# Timing of Discovery

T HE PROVISION OF DISCOVERY AT AN EARLY POINT IN CRIMINAL PROCEEDINGS IS ESSENTIAL to the operation of a fair, efficient, and accurate justice system. Too often, defense attorneys are unable to provide meaningful legal advice due to a lack of knowledge about the prosecution's case. Competent representation requires analysis of the charges against the accused,[129] as well as an independent investigation[130] and evaluation of the evidence likely to be provided to the grand jury and/or admitted at trial.[131] Access to key information— *e.g.,* offense reports, witness names and witness statements—allows defense lawyers to evaluate the strength of the prosecution's case, locate and preserve evidence that is helpful to their clients' defense,[132] and assist an accused in making an informed decision about how to proceed.

For example, in an assault case, it is impossible for defense counsel to assess the degree of a defendant's criminal liability without studying eyewitness accounts and the complainant's medical records. There may be evidence that the accused acted in self-defense or the complainant may have made exculpatory statements to medical professionals—none of which can be uncovered unless the offense report, and the names of bystanders and the complainant are produced by prosecutors to defense counsel. In reviewing these materials, defense counsel can evaluate the charges filed against the defendant, enter meaningful plea negotiations and conserve precious criminal justice resources by seeking reduced charges or a no-bill at the grand jury stage of the case.

An even playing field during the initial phases of a case also increases the accuracy of plea dispositions. Prosecutors frequently incentivize guilty pleas during the initial phases of a criminal proceeding by offering some concessions—typically a reduction in the charges in exchange for bringing the case to a swift resolution. In theory, this bargaining process is conducive to a streamlined criminal justice system. Yet, when coupled with unequal access to information, such promises of favorable treatment substantially increase the risk that an innocent defendant will admit guilt for a crime he did not commit.[133] Prompt access to the state's evidence allows the defense to enter informed decisions regarding how to proceed and minimizes this "innocence problem."[134]

Wrongful pleas are a particular concern in Texas,[135] where the overwhelming majority of criminal cases are brought to a swift resolution. During the 2013 fiscal year, 96 percent of all district court (felony) convictions were obtained via a plea of guilty or *nolo con-*

129. *State Bar of Texas, Performance Guidelines for Non-Capital Criminal Defense Representation* Guideline 2.2(B)(1) (2011), *reprinted in* 74 TEX. BAR J. 616, 621 (July 2011) (stating counsel must "[b]e familiar with the elements of the offense and the potential punishment range").
130. *Id.* at 4.1-3.
131. *Id.* at 6.1(a) ("Under no circumstances should counsel recommend to the client acceptance of a plea agreement unless appropriate investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial.").
132. JUSTICE PROJECT, EXPANDED DISCOVERY IN CRIMINAL CASES 5-6 (2007), *available at* http://www.prearesourcecenter.org/sites/default/files/library/expandeddiscoveryincriminalcasespolicyreview.pdf [hereinafter JUST. PROJ. REPORT].

133. Although no study has been able to fully evaluate the frequency of "wrongful pleas" in the U.S. criminal justice system, it is well-documented that individuals frequently plead guilty to offenses that they did not commit. *E.g.,* John H. Blume and Rebecca K. Helm, *The Unexonerated: Factually Innocent Defendants Who Plead Guilty*, (2014) Cornell Law Faculty Working Papers, Paper 113 at 22 [hereinafter Blume & Helm] (detailing that indigent defendants accused of misdemeanor crimes frequently plead guilty to crimes they did not perpetrate in order to cut their losses); Lucian E. Dervan and Vanessa A. Edkins, *The Innocent Defendant's Dilemma: An Innovative Empirical Study of Plea Bargaining's Innocence Problem, 103 J.* CRIM. L. & CRIMINOLOGY *1, 34* (2013) (finding in a clinical study that 56.4% of "innocent" participants accepted a plea offer).
134. *See* Eric Dexheimer, *Delays create Texas' unknown exonerees,* AUSTIN-AM. STATESMAN, Apr. 19, 2014 (identifying twenty instances where defendants pled guilty to drug-related offenses and were subsequently exonerated by DPS lab results).
135. Texas has had several high-profile cases involving wrongful guilty pleas. Christopher Ochoa falsely pleaded guilty to raping and murdering Nancy DePriest in order to avoid a death sentence, and later testified against Richard Danziger. Both men were exonerated 12 years later after DNA testing confirmed that another man committed the crime. *See State v. Oakley,* 227 S.W.3d 58, 59 (Tex. 2007); *see also Ex parte Ochoa,* No. AP-74,246 (Tex. Crim. App. Dec. 19, 2001) (unpublished per curiam opinion); *Ex parte Danziger,* No. AP-74,244 (Tex. Crim. App. Dec. 19, 2001) (unpublished per curiam opinion). In Dallas, innocent defendants pleaded guilty and were deported or sent to prison for possessing a controlled substance that, when finally analyzed, turned out to be powdered gypsum. Samuel Gross, et al., *Exonerations in the United States, 1989 through 2003,* 95 J. CRIM. L. & CRIMINOLOGY. 523, 535 (2005).

*tendere* (no contest),[136] and nearly half of all disposed cases—45 percent—were left pending for 90 days or less.[137] Misdemeanor cases are handled with similar alacrity.[138] Realization of the Morton Act's mandate requires the prompt disclosure of discovery so that relevant discoverable information can be put to use in all cases, not merely the ones that are brought to trial. This intent is reflected in the bill language, which makes clear that the Act applies to cases resolved through plea bargaining and suggests that the discovery requirements are not waiveable.[139] Yet, our research reveals that delays in the provision of discovery remain a pervasive issue in Texas and that a number of prosecutor offices ask defendants to waive their rights to discovery as a condition of a plea bargain.

In response to our Public Information Act requests, the vast majority of prosecutor offices reported no written policy regarding when they will accept and/or respond to a defendant's request for discovery. Among those that sent written statements of their policies only 20[140] set out standards that comported with the statutory directive to furnish discovery "as soon as practicable" after a request is received.[141] The remainder provide discovery only at a specific point in the proceedings—*e.g.*, upon the filing of a formal charging instrument—or place contingencies on the production of discovery that are without any legal basis. As a result, many defendants are not receiving the discovery to which they are entitled under the Morton Act.

## Statutory Requirements

> Subject to the restrictions provided by Section 264.408, Family Code, and Article 39.15 of this Code, *as soon as practicable* after receiving a *timely request* from the defendant the state shall produce and permit the inspection and electronic duplication, copying, and photographing, by or on behalf of the defendant[.][142]

On its face, this text requires that prosecutors produce information to the defense at an early point in the criminal proceedings against an accused. Contrary to the office policies of many elected district and county attorneys, the Act contains only one condition for triggering the right to this production: the receipt of "a timely request from the defendant." There is no reference to a case's procedural posture or reservation of the State's right to deny access to specified materials under certain circumstances. A request for discovery may be submitted at any point in the proceedings against the accused, and once it is received, the prosecution must respond "as soon as practicable." This plain reading also is reflected in the Act's legislative history. The original bill required discoverable information to be disclosed "no later than 30 days after the defendant's initial appearance."[143] However, this clause was struck from the Senate Committee Report and replaced by the current statutory language,[144] signifying that the Legislature considered and rejected the proposal to require discovery at a specific point in a case's life cycle.

The term "as soon as practicable" requires that prosecutors provide discoverable information to the defense as soon as reasonably possible in light of the circumstances at hand—*e.g.,* the amount of information, its format, and resources available for processing. Although no appellate court has interpreted the phrase in the context of Article 39.14, civil courts have read "as soon as practicable" as requiring that a party undertake a particular course of action with-

136. Office of Court Administration, Annual Statistical Report for the Texas Judiciary: Fiscal Year 2013 40 (2014), *available at* http://www.txcourts.gov/media/467863/2013-Annual-Report9_26_14.pdf [hereinafter OCA FY 2013].

137. Disposition data regarding criminal cases in Texas is published on the Office of Court Administration's website at http://card.txcourts.gov/ReportSelection.aspx (select "District Court Data Reports" and "Age of Cases Disposed" from the drop down menus and click "Continue," on the following screen select the time period for September 2012 through August 2013) (last visited Dec. 15, 2014). The Texas government's fiscal year runs from September 1 of the previous year through August 31.

138. *OCA FY 2013, supra* note 135 at 53, 66 (stating that 97.3 percent of all cases disposed in statutory county courts were resolved with a plea of guilty/nolo contendere, and 95.9 percent of all cases disposed in constitutional county courts were resolved with a guilty/nolo plea).

139. *See* Tex. Code Crim. Proc. art. 39.14 (parties cannot agree to lesser discovery requirements than the law mandates).

140. District attorney offices in Calhoun, Harris, Eastland, Kleberg, Leon, Lubbock, Midland, Milam, Moore, Newton, Tarrant, and Taylor counties and the 69th (Dallam, Hartley, Moore & Sherman counties) Judicial District had written policies that were consistent with their obligations under the Morton Act. County attorney offices in Blanco, Cooke, Franklin, Hartley, Kennedy, Montgomery and Williamson counties also had policies that conformed to the statute's requirements. Dallas County defense lawyers reported that discovery materials are made available upon request, regardless of when the request is entered. Travis and Navarro counties do not accept discovery requests until specified periods of time have elapsed (5 or 10 days, depending on the underlying charge), which is an improper restriction on the defense's ability to request and access discoverable information.

141. In addition to these 20 jurisdictions, the Wood County District Attorney's Office provides discovery at or before the defendant's arraignment. Depending on how this policy is implemented—*i.e.*, if discovery is provided in an expeditious manner in all cases without regard to when the arraignment occurs it may be consistent with the statute.

142. Tex. Code Crim. Proc. art. 39.14(a) (emphasis added).

143. S.B. 1611, 83rd Leg., R. Sess. (Tex. 2013) (originally filed version).

144. *Id.* (Senate Committee Report).

# APPENDIX I

Tex. Comm. on Prof'l Ethics, Op. 646 (2014).

## QUESTION PRESENTED

As a condition for allowing criminal defense lawyers to obtain information in the prosecutor's file, may a prosecutor require defense lawyers to agree not to show or provide copies of the information to their clients and agree to waive court-ordered discovery in all of the lawyers' cases?

## STATEMENT OF FACTS

A district attorney requires criminal defense lawyers to sign a confidentiality agreement as a condition to granting lawyers access to the prosecutor's file (a so-called "open file" arrangement). The agreement allows lawyers to obtain discoverable information in the prosecutor's file in exchange for their agreeing not to share copies of that information with anyone else, including the lawyers' clients, and their agreeing not to seek court-ordered discovery in any of their clients' cases.

## DISCUSSION

Professional Ethics Committee Opinion 619 (June 2012) addressed the question of whether a prosecutor may require and defense counsel may agree "that documents the prosecutor produces to defense counsel may be shown to the defendant but that copies of the documents may not be given to the defendant[.]" The opinion observed: "Although the prosecutor has an obligation under Rule 3.09(d) [of the Texas Disciplinary Rules of Professional Conduct] to disclose to the defense all exculpatory or mitigating evidence, the Rule is silent as to the disclosure of other evidence and as to restrictions that may be placed on evidence and information disclosed." This committee concluded in Opinion 619 that the Texas Disciplinary Rules of Professional Conduct permit such agreements, provided that, before signing such an agreement, defense lawyers must comply with their duties under Rule 1.03(b) to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

Since this committee issued Opinion 619, the legislature passed and the governor signed the Michael Morton Act, codified at Tex. Code Crim. Proc. art. 39.14. Effective January 1, 2014, the Act amended article 39.14 of the Texas Code of Criminal Procedure to require that prosecutors disclose all information in a prosecutor's file except the prosecutor's work product and other information (such as information about victims and children) that is made confidential by law. Among other things, article 39.14 permits discovery and copying of all witness statements, not just the defendant's statement. *Cf.* Tex. R. Evid. 615(a) (requiring production of a statement of a witness other than the defendant only after the witness has been passed for

1

cross-examination during trial). Furthermore, article 39.14 does not require (or permit a prosecutor to require) any concession by criminal defense lawyers or their clients in order to receive such discovery nor must defendants seek a court order to secure the discovery mandated by that article. Article 39.14(a) requires the disclosure of the prosecutor's file "as soon as practicable after receiving a timely request from the defendant . . . ."

Comment 1 to Rule 3.09 states that "a prosecutor is obliged to see that the defendant is accorded procedural justice, that the defendant's guilt is decided upon the basis of sufficient evidence, and that any sentence imposed is based on all unprivileged information known to the prosecutor." Furthermore, Rule 8.04(a)(12) provides that a lawyer shall not "violate any other laws of this state relating to the professional conduct of lawyers and to the practice of law."

Because article 39.14 requires an "open file" policy by prosecutors without pre-conditions, prosecutors would violate Rule 8.04(a)(12) if they refused to produce and permit the inspection of their file in accordance with the provisions of article 39.14 unless defense lawyers first agreed to waive certain rights of their clients. Under article 39.14—and, therefore, under Rule 8.04(a)(12)—prosecutors are required to produce and permit the inspection of their files, subject only to the limitations set forth in article 39.14. Thus, prosecutors would violate Rule 8.04(a)(12) if they attempted to impose conditions not found in article 39.14 before making the required disclosures.

The committee concludes that the Michael Morton Act has rendered Opinion 619 obsolete because the act requires an "open file" policy by all Texas prosecutors without requiring defendants or their lawyers to agree to any restrictions on their use of materials in the file except as provided in the act.


**CONCLUSION**

The Texas Disciplinary Rules of Professional Conduct require prosecutors to comply with the Michael Morton Act, Tex. Code Crim. Proc. art. 39.14, including making disclosures required by the act. Therefore, prosecutors may not, as a condition for providing information in their files they are obligated to disclose, require that criminal defense lawyers agree not to show or provide copies of the information to their clients, nor require that criminal defense lawyers agree to waive court-ordered discovery in all of their clients' cases.